**Christopher James SCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–85–272–CR.**

Court of Appeals of Texas,
Austin.

Nov. 19, 1986.

James Kreimeyer, Kreimeyer, Cain & Jezek, Belton, for appellant.

Arthur C. Eads, Dist. Atty., James T. Russell, Administrative Asst., Belton, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

PER CURIAM.

A jury found Christopher James Scott guilty of indecency with a child. Tex.Pen. Code Ann. § 21.11 (Supp.1986). The court assessed punishment at imprisonment for ten years. In his sole point of error, appellant complains that it was error to admit evidence of a prior extraneous offense, as this offense was not relevant to a material issue involved in the charged offense.

The indictment on which appellant was tried alleged that he

> did then and there with the intent to arouse and satisfy the sexual desire of the said Christopher James Scott, engage in sexual contact with [D.L.], a child younger than seventeen years of age and not the spouse of the said Christopher James Scott, by then and there touching a part of the genitals of the said [D.L.].

The twelve-year-old complaining witness testified that on the day of the offense she was babysitting with two younger children, aged six and two, and had taken them fishing at an old water treatment plant near her house. A man she identified at trial as appellant approached the children and spoke with them. When the children moved on, appellant followed them. D.L. testified that when she sent the younger children to retrieve the fishing gear, appellant grabbed her by the hips, sat her down and started touching her vaginal area, telling her that they were "just going to have some fun." When D.L. started to run away, appellant told her that if she left he would hurt her. Appellant then tried to remove D.L.'s pants and, failing that, proceeded to touch her vaginal area and masturbate himself until he ejaculated. Appellant told D.L. that if she told anyone about what had happened, he would kill her.

Appellant took the stand in his own behalf. He testified that he had been changing the oil in his car at the water treatment plant on the day the offense occurred, and had talked with the children and helped them with their fishing. At one point appellant left the area where the children were fishing to find a private place to go to the bathroom. He testified that as he was urinating behind a tree, he looked up and saw D.L. watching him with an extreme amount of interest. He further stated that any exposure of his genital parts in the presence of the child was unintentional. Appellant denied making any sort of assault on D.L.

On cross-examination, the prosecutor asked appellant whether he remembered an incident seventeen days prior to the date of the charged offense in which he exposed his genitals to a woman in a convenience store. Over appellant's objection, the prosecutor elicited from appellant an admission that while using the store restroom, he had accidentally been seen by the female store attendant with his pants down and his genitals exposed.

When the defense rested, the State called as a rebuttal witness Leigh Ann Marrs, the convenience store attendant. Marrs testified that appellant entered the store and asked her to use the restroom. Moments later, appellant emerged from the restroom to announce that there was no toilet paper. Marrs walked around the counter and saw appellant standing in front of the restroom, about two feet into the store area, with his

pants down to his ankles and his genital area exposed. Marrs gave appellant a roll of toilet paper and called the police. She did not file charges against appellant.

As a general rule, evidence showing that the accused has committed extraneous offenses or other acts of misconduct is inadmissible. However, such evidence may become admissible upon a showing by the prosecution that the extraneous transaction is relevant to a material issue in the case and that its relevancy value outweighs its inflammatory or prejudicial value. *Williams v. State,* 662 S.W.2d 344 (Tex.Cr. App.1984). Among other things, it has been held that evidence of an extraneous offense may be admissible to rebut a defensive theory. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972).

In his testimony appellant did more than merely deny commission of the charged offense. Rather, appellant admitted having an encounter with D.L. at the time and place in question, but an encounter of an entirely different nature from that described by D.L. According to appellant, all that happened was that he had been accidentally observed by D.L. while urinating. Implicit in appellant's testimony is the suggestion that D.L.'s testimony was the product of a twelve-year-old girl's vivid imagination.

The truth of appellant's alternative description of the events in the park was certainly a material issue in the case. After careful consideration, we conclude that the evidence concerning the incident in the convenience store was relevant to this material issue and that its relevancy outweighed its prejudicial nature.

Appellant argues that the extraneous transaction was not relevant because the convenience store incident was too dissimilar to the charged offense. Appellant points out that he was charged in this case with an act of sexual abuse by touching the genitals of a child. At the convenience store, appellant was guilty of, at most, an act of indecent exposure to an adult. *See* Tex.Pen.Code Ann. § 21.08 (1974 and Supp.

1986). However, the relevance of the extraneous transaction does not derive from any similarity it may have to the charged offense, but from its similarity to appellant's defensive testimony. That testimony and the extraneous transaction share a common characteristic: in both, appellant (allegedly) accidentally exposed himself to another person while urinating. As we shall now discuss, this similarity rendered the extraneous transaction relevant to rebut the defensive theory.

The relevancy of the extraneous transaction derives from the application of what has been referred to as the doctrine of chances. This doctrine has been explained as:

> the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them.

2 Wigmore, Evidence, § 302 (Chadbourn rev. ed. 1979).

*Plante v. State,* 692 S.W.2d 487 (Tex.Cr. App.1985), was a prosecution for theft. The defendant, a contractor, purchased several thousand dollars worth of adobe tile on credit and subsequently failed to pay for it. Evidence of extraneous business transactions in which the defendant had failed to pay for goods or services rendered on credit was held relevant, under the doctrine of chances, on the issue of whether appellant's appropriation of the tile was unlawful, i.e., whether or not he intended to pay for the tile when he ordered it. In *Morgan v. State,* 692 S.W.2d 877 (Tex.Cr.App.1985), the defendant, like appellant, was charged with indecency with a child by contact.

The undisputed evidence showed that the defendant had briefly touched the child's genital area while playing with her. Evidence that the defendant had touched the genitals of other children was held relevant, under the doctrine of chances, to show that the charged act was not an accident, but done with the intent to arouse or gratify the defendant's sexual desire.

In *Plante* and *Morgan,* the defendants' conduct was capable of both an innocent and a criminal interpretation, and the doctrine of chances was utilized to prove the unlikelihood of the innocent explanation. The instant cause is distinguishable from *Plante* and *Morgan* in that D.L.'s testimony, standing alone, described a course of conduct by appellant sufficient to establish beyond a reasonable doubt all elements of the charged offense. However, through his own testimony, appellant described a course of conduct that contradicted D.L.'s testimony in all material respects. In our opinion, the doctrine of chances was legitimately employed to prove the unlikelihood of appellant's defensive theory.

Appellant's testimony described a sequence of events that, while unusual and abnormal, might perhaps occur in one instance. The plausibility of appellant's defensive theory is greatly reduced, however, when it is learned that seventeen days before his "accidental" encounter with D.L., he had "accidentally" been seen by the female attendant of a convenience store while using the store's restroom. Either incident, standing alone, could conceivably have been an accident. But it strains credibility to assert that two such accidents occurred in a space of little more than two weeks. Thus, the evidence of the convenience store incident was highly relevant to the issue of the credibility of appellant's defensive theory.

■ The question remains whether the relevancy value of the extraneous transaction outweighed its prejudicial value. This is basically a question of whether the evidence had a greater potential for assisting the jury in resolving a material issue or for confusing the jury and diverting their attention from the material issue. *Rubio v. State,* 607 S.W.2d 498 (Tex.Cr.App.1980) (Clinton, J., concurring).

■ The record reflects that only two persons, D.L. and appellant, were present at the time and place in question. D.L.'s testimony, if believed by the jury, was sufficient to convict appellant of the charged offense. Appellant's testimony, if believed by the jury, absolved him of any guilt. Under the circumstances, we find that the relevancy of the extraneous transaction outweighed its prejudicial nature.

The judgment of conviction is affirmed.