**Charles Allan DABNEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–89–00445–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 5, 1991.

Discretionary Review Refused
Dec. 11, 1991.

Will Gray and C. Logan Dietz, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty. and J. Harvey Hudson, Asst. Harris County Dist. Atty., for appellee.

Before WILSON, DUGGAN and MIRABAL, JJ.

### OPINION

WILSON, Justice.

The appellant was found guilty of theft of real estate from 16 complainants in an aggregate value of more than $20,000, a second degree felony.[1] The jury assessed punishment at 10 years confinement. We affirm.

In two points of error, the appellant challenges the sufficiency of the evidence pertaining to his culpable intent, and evidentiary rulings involving the admission of some 150 "extraneous transactions."

As we decide that resolution of point of error two makes virtually self-evident the result when considering point of error one, we address the latter first after briefly explaining the background to the alleged offense.

### 1. General Environment.

We judicially notice that the market for real estate lacks relative liquidity, particularly so when the general economy is trending down in the normal business cycle. Lifetime accumulations in stocks and bonds can be sold through highly liquid markets worldwide within days, even hours. Holders of real estate, however, have no single central market with multitudes of buyers to approach. Except in times of rapid growth and business expansion, buyers can be difficult to find. Months and even years can pass before a seller seeking a reasonable price, or sometimes even a depressed price, can find a willing buyer. It is within this general milieu that the appellant, Charles Allan Dabney, conducted his business as Reliance Homes.

### 2. Statement of Facts.

The appellant sought out others who for a variety of reasons wanted to sell their real estate. Often, these sellers were anxious to find a buyer. The appellant provided a ready market for those sellers willing to trade their equity, if any, to the appellant for the peace of mind of being "released" from the obligation to pay mortgage holders.

Reliance Homes purchased by assumption dwellings backed by FHA or VA mortgages. The appellant usually located homes on a referral basis through builders who had contracted with sellers for the purchase of a new home. The sale of the new home was often delayed because of the inability of the putative buyer to sell his existing home, thus clearing the way for the new home purchase.

After locating a potential customer, the appellant would conduct an inspection of the house before notifying the prospective seller that he would be willing to assume the mortgage. The seller, or the home builder, paid the appellant a fee to make the assumption purchases. About three-quarters of these homes were resold to various parties on a subsequent assumption. Most of the houses the appellant purchased, whether kept or resold, were foreclosed upon by the FHA or VA guaranteed mortgage holders. The original sellers, complainants here, were left with deficiency obligations owed to the federal agencies after the completion of foreclosure proceedings.

In each transaction, a deed of trust to secure assumption was executed conveying the property to the sellers in trust to secure the payment of the FHA or VA guaranteed mortgage. Under the terms of these documents, the seller, as beneficiary, was empowered to pay any installment of principal or interest upon which Reliance defaulted and, if not reimbursed within five days, to proceed with a foreclosure at which the seller had the right to recover the property.

The testimony of complainant, Mr. Andrew Newell, represented a typical transaction. In 1982, Mr. Newell bought a home in Houston for roughly $62,000, with a

---

1. Tex.Penal Code Ann. § 31.03 (Vernon 1989).

mortgage interest rate of 15.5%. When several years later interest rates dropped, Mr. Newell and his wife considered purchasing a newer, larger home. With a new home purchase possible at an interest rate of 10.5%, the Newells thought they could buy a new house, and pay a smaller payment than on their previous one.

The impediment to the new home purchase was in the difficulty of finding a buyer for their existing home. Newell testified that one realty company had offered to take the home off of the Newell's hands for a fee of $3,600. Newell declined the offer, and the experience of trying to find a buyer at reasonable terms created doubt in the Newells' minds that the new home purchase was possible. The Newells then received a letter from the appellant stating that the appellant was a lawyer and vice-president of Reliance Homes, and that his business was the purchase and resale of similarly situated homes.

Intrigued by the offer, the Newells permitted the appellant to inspect their home. During a brief inspection, the appellant told the Newells that he had been in the oil business, that he was a former football player for the Atlanta Falcons, and that he was now buying and then selling homes to people who had credit problems.

The Newells sold their house to the appellant on August 14, 1985. The transaction was closed the same day as the Newell purchase of the new home. In October of 1985, the Newells received a delinquent payment notice from their former mortgage company. Mr. Newell testified that the appellant reassured him that the payments would be made. They were not, the mortgage company threatened to foreclose, and Mr. Newell found himself forced to foreclose on the appellant. After hiring a lawyer, Newell learned the house had been resold, and was being occupied by a Joe Staggs. To save his financial reputation, Newell was forced to pay total costs of approximately $10,000. Newell testified that if he had known that the appellant was not going to make payments on their old house, he would not have sold the house to the appellant in the first place.

3. Point of Error Two: "Extraneous Transactions."

The nature of the offense sought to be proved by the State turns on the appellant's intent at the time of the individual transactions with each of the 16 complainants. The State's theory was that the appellant had no intent to make mortgage payments on the subject properties **at the time** he bought them.

In his second point of error, the appellant alleges the trial court erred by allowing the introduction of extraneous "transactions." Here, the trial court admitted over 150 property transactions of the appellant. The appellant uses the words "transactions" and "offenses" interchangeably. The appellant, however, applies the standard of review for extraneous offenses in his argument.

■ The general rule is that an accused may not be tried for some collateral crime or for being a criminal generally. *Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App.1983). Extraneous offense testimony is not, however, always inadmissible. Evidence of extraneous offenses committed by the accused has been generally held admissible: (1) to show the context in which the criminal act occurred; (2) to circumstantially prove identity where the State lacks direct evidence on this issue; (3) to prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself; (4) to prove malice or state of mind; (5) to show motive; and (6) to refute a defensive theory raised by the accused. *Williams,* 662 S.W.2d at 346 (citing *Albrecht v. State,* 486 S.W.2d 97, 100 (Tex.Crim.App.1972)); *see also Turner v. State,* 715 S.W.2d 847, 850 (Tex.App.—Houston [14th Dist.] 1986, no pet.). A mere offer of extraneous offense evidence to prove intent or motive, however, obviously does not confer relevance on it, much less admissibility.

We must continue to recognize, that the various categories of exceptions—intent, design or plan, identity, etc.—are not magic passwords whose mere incantation

will open wide the courtroom doors to whatever evidence may be offered in their names.

*United States v. Goodwin,* 492 F.2d 1141, 1155 (5th Cir.1974). We should always keep in mind the relevance, if any, for which the State is offering evidence of other transactions or offenses. When offered for certain categories of proof, extraneous offenses are not automatically admitted as exceptions. *Boutwell v. State,* 719 S.W.2d 164, 172 (Tex.Crim.App.1985).

Under common law, the test for the admission of extraneous offenses was two-pronged. First, it was determined whether the extraneous offense was relevant to a material issue in the case other than the appellant's character. Second, the evidence had to possess probative value that outweighed its inflammatory or prejudicial effect. *Clark v. State,* 726 S.W.2d 120, 122 (Tex.Crim.App.1986); *Caro v. State,* 771 S.W.2d 610, 617 (Tex.App.—Dallas 1989, no writ); *Van Brown v. State,* 771 S.W.2d 218, 221 (Tex.App.—Houston [1st Dist.] 1989, no writ).

The second prong seemingly mirrors the requirement of rule 403 of the Texas Rules of Criminal Evidence. According to Tex. R. Crim.Evid. 403, relevant evidence may be excluded only

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Under the former common-law rules in Texas, the *proponent* of a piece of evidence was required to show that the probative value of his offered evidence *outweighed* its prejudicial effect. However, under the newly adopted rules, neither party is specifically assigned a burden. Once an objection is made, the trial must engage in the balancing process to determine whether the proffered evidence's prejudicial effects *substantially outweigh* any probative value. *Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim.App.1990, n.p.h.) (not yet reported); *Crank v. State,* 761 S.W.2d 328, 342 n. 5 (Tex.Crim.App.

1988). Therefore, the first prong remains unchanged, but the second prong has been materially reshaped.

The State, citing *Scott v. State,* 720 S.W.2d 264, 266 (Tex.App.—Austin 1986, no pet.), asserts that the admitted extraneous transactions derive their relevancy from the doctrine of chances, or in other words, that logical inference(s) may be drawn from repeated conduct. The *Scott* court stated:

the relevance of the extraneous transaction does not derive from any similarity it may have to the charged offense, but from its similarity to appellant's defensive testimony.

*Scott,* 720 S.W.2d at 266. In the present case, the appellant alleges that he made every effort to make all the payments, but as his business started to decline, he had more houses in inventory and not enough money coming in to cover the mortgages.

The prosecution states that it would be impossible to accurately determine the appellant's intent by focusing only on a single transaction. The State readily admits that the appellant could have intended to make the mortgage payments when entering a single transaction, and that subsequent events could have left the appellant with the inability to pay. Given that series of facts, the case would resolve itself into one of civil responsibility. Quoting from the State's brief:

"However, as repeated instances of this conduct are revealed, one must ultimately conclude that the appellant, from the inception, had no intention of fulfilling his obligations, and that his contractual promises were merely a ruse employed by him to deceive his victims. Under these circumstances, the appellant's appropriation of the real estate was without the effective consent of the owners, and such conduct constitutes a criminal offense. In short, without evidence of multiple transactions, no theft could have been established in this case."

Proof of a culpable mental state generally is based on circumstantial evidence. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex. Crim.App.1978). A factor in determining

probative value is whether the State *needs* the evidence to prove its case. *Wells v. State*, 730 S.W.2d 782, 785 (Tex.App.—Dallas 1987, pet. granted).

■ Returning to the second prong of the admissibility test, the appellant has failed to demonstrate that the prejudicial effect of the testimony has *substantially outweighed* its probative value. Essentially, all evidence offered by a party to a lawsuit will be prejudicial to the opposing party. *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980).[2]

Finally, our sister court in *Alarid v. State*, 762 S.W.2d 659 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd), admitted 71 extraneous real estate transactions to show the appellant's intent when he purchased houses from two sellers, and then failed to make mortgage payments. 762 S.W.2d at 661–62. In the present case, the trial court admitted over 150 transactions of the appellant concerning properties that were purchased and later foreclosed on. Additionally, the jury charge properly instructed the jury that the extraneous transactions may only be considered to show intent, system, design, and scheme, if any, of the appellant.

Point of error two is overruled.

### 4. Point of Error One: Insufficient Evidence.

In his first point of error, the appellant argues that the conviction for theft of real estate must be reversed because there was insufficient evidence of the intent to permanently deprive the owners of their property. The appellant contends each seller was given a deed of trust to secure assumption, and therefore, in the event of default, each seller could foreclose and recover the property.

■ The standard of review for challenges to sufficiency claims is whether, viewed in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234 (Tex.Crim.App. 1989). If there is a reasonable hypothesis other than the guilt of the accused, then it cannot be said that the guilt has been shown beyond a reasonable doubt. *Butler*, 769 S.W.2d at 234. The identical standard is applied to sufficiency challenges involving circumstantial cases. *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983).

■ The appellant argues that because each of the transactions was secured by a deed of trust to secure assumption, the State failed to show sufficient evidence of the appellant's intent to "deprive" the owners of their property. Section 31.01(3)(A) of the Texas Penal Code defines "deprive" under the theft statute as:

> to withhold property from the owner permanently or for so extended period of time that a major portion of the value or enjoyment of the property is lost to the owner.

TEX.PENAL CODE ANN. § 31.01(3)(A) (Vernon 1989). The appellant contends that the seller always had the right to recover the property under the deed of trust.

> [T]he 'manner of acquisition' is inconsequential to the evil of a theft: the gravamen of theft is in *depriving the true owner of the use, benefit, enjoyment or value of his property*, without his consent.

*McClain v. State*, 687 S.W.2d 350, 353 (Tex.Crim.App.1985) (emphasis in original).

In the instant case, the appellant, after collecting his fee, would rarely begin payment of the mortgages. Each of the homeowners who testified stated that he would not have consented to the transfer of their property had they known that no subsequent payments would be made to his

---

**2.** In *Figueroa,* the court stated that evidence is prejudicial and inadmissible:

> only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence....

618 F.2d 934, 943 (2d Cir.1980). Thus, only "unfair" prejudice provides the basis for exclusion of relevant evidence.

mortgage holders. The charge to the jury accurately defined "effective consent" as:

assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. *Consent is not effective if induced by deception or coercion.* (Emphasis added.)

This Court is presented with repeated testimony that the sellers were told that the appellant was an attorney and a former football player for the Atlanta Falcons,[3] and that they would be released from all liability, all of which was false.

In *Alarid*, also a real estate theft case, the court found sufficient evidence to establish criminal intent, as well as sufficient grounds for the admissibility of extraneous transactions as previously noted. 762 S.W.2d at 661. The court was presented with evidence that the appellant failed to make payments on two houses. The sellers testified that they would not have entered into the transaction had they known that the appellant would make no payments. *Id.* In the present case, we have the testimony of 10 sellers who uniformly stated they relied on the appellant and would have never agreed to the assumption had they known it would eventually result in the foreclosure of their houses.

Additionally, the State correctly argues that deprivation is not an element of intent to deprive. *Rowland v. State*, 744 S.W.2d 610, 612 (Tex.Crim.App.1988). This Court, in *Ellis v. State*, 714 S.W.2d 465, 475 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd), held that a temporary deprivation supports a finding of the intent to deprive.[4] In the present case, the sellers were deprived, at least temporarily, of the legal title to their houses.

When viewed in the light most favorable to the judgment, the jury could have found the essential elements of the crime beyond a reasonable doubt. The appellant's first point of error should, therefore, be overruled.

Finding no error in the judgment of the trial court, the judgment is in all things, affirmed.

---

**3.** The appellant testified that his former partner, now deceased, who drafted the initial letters sent to the sellers, was an attorney, and by oversight, forgot to change the language of the letter. Additionally, the appellant admits that, although drafted, he never played for the Atlanta Falcons.

**4.** In *Ellis*, the defendant, who was convicted of falsifying credit records for customers, argued that there was no intent to deprive the lending institution because his customers were repaying the loans. This Court held the temporary deprivation of the funds was sufficient to support a finding of culpable intent.