Affirmed and Opinion filed August 29, 2002















Affirmed and
Opinion filed August 29, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-01226-CR

____________

 

RALPH O’HARA DOUGLAS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

_____________________________________________________

 

On Appeal from the 179th District Court

Harris County, Texas

Trial Court Cause No. 850,272

 

_____________________________________________________

 

O P I N I O
N

            Appellant,
Ralph O’Hara Douglas, appeals his conviction for theft of property in the
aggregate amount of between $100,000 and $200,000.  A jury found him guilty and assessed punishment,
enhanced by a prior theft, at life in prison and a $10,000 fine.  On appeal, appellant contends: (1) the
evidence is legally and factually insufficient to support the verdict; (2)  the trial court erred in refusing his
requested additions to the jury charge; (3) the trial court violated his
constitutional right to self-representation by failing to timely address his
request and by failing to properly admonish him; and (4) the trial court erred
in requiring him to proceed pro se in the punishment phase.  We affirm.








I.  Background

            Appellant
was charged with unlawfully appropriating four tracts of real property without
the consent of the complainants. 
Although the properties were owned by four different individuals and
were appropriated in four separate transactions, the indictment charged that
the thefts were all pursuant to one scheme and continuous course of
conduct.  Each of the complainants owed a
debt secured by his or her real property and was having difficulty making
payments.  Appellant learned of the
complainants’ difficulties and offered assistance.  As part of the transaction, he arranged for
each owner to deed their real property to him. 
Appellant then secured a loan for himself on each of the pieces of
property.  Ultimately, the properties
were foreclosed upon or otherwise conveyed by appellant to a third party.  The jury convicted appellant of aggregated
theft of between $100,000 and $200,000.

            Prior
to trial, appellant filed a motion to act as co-counsel in his defense.  Appellant brought the motion to the court’s
attention immediately prior to voir dire of the jury panel.  The judge denied the motion, stating he would
not allow hybrid representation.  Appellant
then offered to prepare a motion for self-representation, but the court said
that it would not be timely.  Despite the
court’s ruling, appellant continued to request self-representation, and on the
beginning of the second day of trial, the court conducted a hearing on
appellant’s request.  During this hearing
it was evident that although appellant wanted to represent himself as “first
chair,” he steadfastly refused to waive his right to assistance of
counsel.  Once again, the trial court
denied appellant’s request.  

            Immediately
prior to the punishment phase of the trial, appellant made an unequivocal
request for self-representation, and the court granted the request.  Appellant, however, apparently also wanted a
new trial on guilt/innocence.

II.  Sufficiency of the Evidence

            In
issues five through fifteen, appellant contends that the evidence is legally
and factually insufficient to support the verdict.  In reviewing legal sufficiency, we examine
the evidence in the light most favorable to the verdict and ask whether any
rational trier of fact could have found all of the elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Santellan v. State, 939
S.W.2d 155, 160 (Tex. Crim. App. 1997). 
We accord great deference to the responsibility of the trier of fact to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences therefrom.  See Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996).  We further
presume that any conflicting inferences from the evidence were resolved by the
jury in favor of the prosecution, and we must defer to that resolution.  See id.
at 133 n.13.  In conducting its review,
an appellate court is not to re-evaluate the weight and credibility of the
evidence but must act only to ensure the jury reached a rational decision.  Muniz
v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988).

            In
reviewing the factual sufficiency of the evidence, we examine all of the
evidence without the prism of “in the light most favorable to the prosecution”
and set aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust.  Johnson
v. State, 23 S.W.3d 1, 6–7 (Tex. Crim. App.
2000).  We consider all of the evidence
in the record and not just the evidence that supports the verdict.  Santellan,
939 S.W.2d at 164.  The court is
authorized to disagree with the jury’s determination, even if probative
evidence exists that supports the verdict. 
Clewis, 922 S.W.2d at
133.  However, a factual sufficiency
review must be appropriately deferential to avoid substituting the appellate
court’s judgment for that of the fact finder or intruding upon the jury’s role
as the sole judge of the weight and credibility of testimony.  Johnson,
23 S.W.3d at 7.  Unless the record
clearly reveals that a different result is appropriate, we must defer to the
jury’s determination concerning the weight given to contradictory
testimony.  Id. at 8.

            Appellant
makes two specific complaints concerning the sufficiency of the evidence.  First, he contends that the record contains
no evidence, or alternatively insufficient evidence, to demonstrate the lack of
effective consent required for theft by fraud. 
Second, he contends the evidence is legally and factually insufficient
to prove theft of over $100,000 in value, particularly because he alleges the
complainants received consideration from appellant in exchange for their homes.

A.  The Evidence

            Appellant
was charged with appropriating four tracts of land pursuant to one scheme and
continuing course of conduct. 
Seventy-seven year old Hattie Mae Willis had lived in her home for
twenty-two years and paid off the first mortgage.  At some point, she obtained a home
improvement loan and, as of December 1996, the outstanding balance was
approximately $7,000.  Willis admitted
she might have been late in making payments on the loan.  Willis testified that she went to appellant’s
office, and he told her he could help her lower her monthly payment and she
would have nothing to worry about if she signed a document he presented to
her.  Willis testified that State’s
exhibit 2, a warranty deed conveying her house to appellant, is the document he
had her sign.  Willis said she had “no
idea [the document] would mean anything about my house.”  She further stated she did not intend to give
appellant her house, nor did she realize she was giving him the house when she
signed the document.  Appellant used the
property to secure a $22,750 loan for himself. 
Eventually, appellant failed to pay on that loan and the lender
foreclosed on Willis’s home.  Willis
testified she had received two sets of foreclosure notices about a year apart,
but appellant told her not to worry about them.

            Jimmie
Jones, a fifty-two-year-old man with an eighth-grade education, contacted
appellant while he was looking for a lender to help him avoid foreclosure due
to an arrearage on his mortgage. 
According to Jones, appellant said he could assist him in obtaining a
loan.  Jones said he told appellant he
did not want to sell his house and that appellant never told him he was giving
his house to appellant.  Jones, however,
did sign a warranty deed.  He testified
he did not know what a warranty deed was at the time he signed the deed.  He also stated he would not have signed it if
he had known, and that he would not have signed it if he had understood that
appellant intended to use the home to secure a loan in his own name.  Jones said appellant told him he had to sign
the document in order to get the loan. 
Additionally, State’s exhibit 11 is a handwritten agreement signed by
Jones, appellant, and Jones’s wife.  The
agreement states that appellant “will assume their house . . . from the Dept.
of Veterans Affairs, for $13,000.00 . . . .” 
It also provides that the Douglases “will live
and stay in the [house] until they repay the loan” and that they will not be
allowed to move out of the house unless “they default on their LOAN”
(emphasis in original).  Jones further
testified that appellant never secured an additional loan as promised, and
because of this, he, Jones, never paid appellant on the debt.  At some point, appellant attempted to
personally evict Jones from the home. 
Loan documents were also admitted, demonstrating that appellant obtained
a loan for himself secured by Jones’s property. 
Appellant later deeded the property to another individual.

            Vernon
King, a seventy-seven-year-old handicapped man, owned and lived in his home for
forty-three years.  The mortgage was paid
off, but King had obtained a home improvement loan of approximately
$2,700.  King testified that he fell
behind in paying the loan payments when he was hospitalized for several
months.  He stated that appellant came to
his home and told him that he was in danger of foreclosure.  According to King, appellant then instructed
him to sign a warranty deed, but King stated he signed it only because
appellant said it was necessary to prevent foreclosure.  King further explained that he did not
understand the nature of the document and that he did not intend to sell his
house to appellant.  He also said that if
he had known the deed conveyed his house to appellant he would not have signed
it, nor would he have signed it had he realized appellant intended to obtain a
loan for himself against the property. 
Appellant, Vernon King, and King’s wife, Clara, also signed a
handwritten agreement, State’s exhibit 32, which states (1) the King’s owed
$8,269.45 on a loan against their home; (2) appellant was to finance the
balance through another bank; (3) the Kings were to pay appellant until the
balance of the “loan” was paid off; and (4) the Kings were to pay appellant an
additional $750.  The evidence further
demonstrates that King paid appellant $183 a month for fifteen months.  Loan documents indicate that appellant obtained
a $24,050 loan secured by King’s property. 
This loan was not repaid, and the house was foreclosed upon.

            Linda
Porter, a fifty-one-year-old widow, was having difficulty paying the remaining
$4,000 balance on her first mortgage as well as the combined balance of
approximately $9,900 she owed on home improvement loans.  She testified that she contacted the
appellant after he left a business card at her home.  She further stated that appellant came to her
house and told her he could loan her the money to pay off the loans and that he
did not want her house.  Porter also
testified appellant had her sign a handwritten document she believed was simply
a proposal for handling her loans. 
State’s exhibit 21 is a handwritten agreement bearing Porter’s signature.  It states that: (1) appellant will attempt to
refinance the house; (2) Porter is then to repay the loan “through his
bank/Mortgage Co.”; and (3) once the loan is paid in
full, Porter will still owe appellant $1,000. 
Porter began paying appellant $375 a month.  About six months later, she received notice
that a mortgage company was foreclosing on the property because appellant was
behind in paying on a loan secured against the property.  Appellant subsequently attempted to evict
Porter from the home.  A warranty deed
concerning the house was admitted into evidence, but Porter testified that the
signature on the deed purporting to be hers was not in fact hers.  She also said that she would not have signed
any document if she had known appellant intended to secure a loan against the
property.  Appellant obtained a $25,250
loan using the property as security.  He
later conveyed the property to another person.

B.  Effective Consent

            Appellant
contends there was insufficient evidence to establish a lack of effective
consent.  The trial court’s charge
closely tracked applicable law.  A person
commits theft if he or she unlawfully appropriates property with the intent to
deprive the owner of the property.  Tex. Pen. Code Ann. § 31.03(a) (Vernon Supp.
2002).  An appropriation of property is
unlawful if it is done without the owner’s effective consent.  Id. §
31.03(b)(1).  Consent is not effective if
it is obtained by deception.  Id. §
31.01(3)(A).  Deception is defined as:

. . . .

            (B) failing to correct a false impression of law or fact
that is likely to affect the judgment of another in the transaction, that the
actor previously created or confirmed by words or conduct, and that the actor
does not now believe to be true;

            . . . .

            (D) selling or otherwise transferring or encumbering
property without disclosing a lien, security interest, adverse claim, or other
legal impediment to the enjoyment of the property, whether the lien, security
interest, claim, or impediment is or is not valid, or is or is not a matter of
official record;  or

            (E) promising performance that is likely to affect the
judgment of another in the transaction and that the actor does not intend to
perform or knows will not be performed, except that failure to perform the
promise in issue without other evidence of intent or knowledge is not
sufficient proof that the actor did not intend to perform or knew the promise
would not be performed.

Id. §
31.01(1).

            The
evidence in the present case supports the conclusion that appellant used
deceptive statements to convince three of the complainants to sign warranty
deeds that they did not understand and would not have signed had they
understood them.  The evidence further
supports the conclusion that he forged a fourth complainant’s signature to a
warranty deed.  After obtaining title to
each of the complainants’ properties, appellant used the properties to secure
loans for himself.  He subsequently
defaulted on several of the loans and all of the properties were either
foreclosed upon or conveyed by appellant to third parties.  This evidence, taken together with the
corroborative testimony and supportive documentary evidence adduced in this
case,  is legally and factually
sufficient to support the conclusion that appellant used deception to obtain
the complainants’ consent to sell him their homes.  See
Dabney v. State, 816 S.W.2d 525, 529–30 (Tex. App.—Houston [1st Dist.]
1991, pet. ref’d) (finding sufficient evidence of lack of effective consent
when complainants testified they would not have sold their homes to defendant
if they had known he would make no payments to mortgage holders); Alarid v. State, 762 S.W.2d 659, 661
(Tex. App.—Houston [14th Dist.] 1988, pet. ref’d) (finding sufficient evidence
of criminal intent when witnesses testified they would not have sold their
homes to defendant if they had known no payments were going to be made).

C.  Valuation

            Appellant
next contends the evidence is legally and factually insufficient to place the
amount of the theft within the monetary range of the level of theft with which
he was charged and convicted.  Appellant
was charged and convicted of theft of property with a value of greater than
$100,000 but less than $200,000.  See Tex.
Pen. Code Ann. § 31.03(e)(6) (Vernon Supp. 2002) (second degree felony
theft).  Specifically, appellant contends
that when the amount of consideration given to the complainants is subtracted
from the aggregate appraised value of the complainants’ homes, the total amount
of the alleged thefts is below $100,000. 
In his brief, appellant asserts that the property appraisals had a
combined range of value from $120,243 to $146,692.  From this figure, he argues that a total of
$43,220.89 should be subtracted from the appraised value to allow for the
amount of loans that appellant actually did pay off for the complainants.  He further maintains that an additional
$19,999.82 should be subtracted from the aggregate amount of the theft for the
costs that appellant alleges the complainants would have had to pay had their
homes been foreclosed on.  See generally Tex. Prop. Code Ann. § 51.003(b) (Vernon 1995)
(listing “cost of sale” among items affecting value in foreclosure sale).  According to appellant, even taking the
highest range of appraisals, $142,692, the subtraction of $63,220.71 (payment
on loans plus avoided costs) results in $83,471.29, a figure that is below the
value amount that he was charged with stealing.[1]

            If
the evidence supported appellant’s contention that the complainants received a
monetary benefit from him, then the amount paid should be subtracted from the
appraised value.  See Tex. Pen. Code Ann. §
31.08(d) (Vernon 1994)
(“[i]f the actor proves by a preponderance of the evidence that he gave
consideration for . . . the property . . . stolen, the amount of the
consideration . . . so proven shall be deducted from the value of the property
. . . .”).  However, the evidence does
not support that contention.  Appellant
did not simply pay off the complainants’ existing loans in exchange for their
homes.  To the contrary, he merely transferred
the complainants’ loans from the bank to himself, promising that payments by
the complainants to him would be lower than they were to the bank.  Indeed, at least two of the complainants,
King and Porter, ended up owing more to appellant than they had owed to the
bank.  Before their transaction with
appellant, each of the complainants owned a home and owed a certain amount to
the bank, yet after the transaction, each complainant had lost title to their
home and owed appellant as much or more than they previously owed the
bank.  Appellant does not contend, and
there is no evidence to suggest, that he ever released the debt of any of the
complainants.  The evidence does not support
appellant’s assertion that he provided complainants with any monetary benefit.[2]

            Furthermore,
the record does not support appellant’s contention that potential costs for
allegedly avoided foreclosures should be subtracted from the total amount of
the theft.  Although the record does
contain some evidence that each of the complainants was having difficulty
paying a loan or loans secured against their home, the record does not
demonstrate that any foreclosure would have actually occurred.  The complainants may well have found another
source for the funds (e.g., friends,
relatives, charities) or may have worked out a more favorable payment schedule
with the lenders.  The theoretical costs
of a foreclosure sale are too speculative in nature to call into question the
sufficiency of the valuation evidence. 
Furthermore, appellant calculates total possible closing costs at
$19,999.82.[3]  Even if we agreed that this amount should
have been subtracted from the lowest aggregate total of the appraisals,
$120,243, it would result in an amount of $100,243.18.  This figure is still within the range for
which appellant was charged and convicted.

            In
his brief, appellant admits that the appraisals ranging from $120,243 to
$146,692 valued the stolen property within the range for which he was charged
and convicted, $100,000 to $200,000.  As
discussed above, the evidence does not support the offsets that appellant
claims should have been subtracted from the value of the stolen property.  Accordingly, we find the evidence is legally
and factually sufficient to support the jury’s valuation of the stolen property.  Appellant’s issues five through fifteen are
overruled.

III.  Jury Charge Issues

            Appellant
next contends the trial court erred in refusing to charge the jury on a lesser
included offense and to instruct jurors they could subtract any consideration
the property owners may have received from their transactions with
appellant.  In order to preserve a claim
of error for appellate review in a criminal case, the complaining party must
make a timely and sufficiently specific objection or request and must comply
with the requirements of the Texas Code of Criminal Procedure.  Tex.
R. App. P. 33.1(a)(1).  In order
to properly object to the court’s proposed charge or request that a particular
instruction or question be included in the charge, the defendant must make a
written objection or request.  Tex. Code Crim. Proc. Ann. arts. 36.14,
36.15 (Vernon Supp.
2002); Vasquez v. State, 919 S.W.2d
433, 435 (Tex. Crim. App. 1996).  The
requirement that the objection or request be in writing is met if it is
dictated to the court reporter in the presence of the court and the State’s
counsel.  Tex. Code Crim. Proc. Ann. arts. 36.14, 36.15 (Vernon Supp.
2002); Ford v. State, 38 S.W.3d 836,
841 (Tex. App.—Houston [14th
Dist.] 2001, pet. ref’d).  The requested
charge need not be in perfect form, so long as it is sufficient to call the
trial court’s attention to the alleged omission in the charge.  Chapman
v. State, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996); Ford, 38 S.W.3d at 841.

            In
the present case, the following exchange occurred immediately before the court
read the charge to the jury:

THE COURT:                        . . . Does the State
have any objections to the Charge?

[PROSECUTOR]:                  No, your honor.

THE COURT:                        And the Defense?

[DEFENSE COUNSEL]:      I didn’t hear you, Judge.

THE COURT:                        Any objection?

[DEFENSE COUNSEL]:      No objection to the Charge other than the
fact that Mr. Douglas would like to have a consideration clause in the Charge
in order to – so that if the jury finds, in fact, that there is something they
can subtract out of something that he paid that they can subtract that from the
value of– the total value.

THE COURT:                        Do you have any case law
to that effect?

[DEFENSE COUNSEL]:      May I see the motion?  May I approach, Judge?  That was filed.  I think, Judge, what is being requested is
eight.            

THE COURT:                        Bring the jury.

THE BAILIFF:                       Yes, sir.

[DEFENSE COUNSEL]:      Motion for a lessor [sic] included offense
clause.

THE COURT:                        You can argue all you
want.  The Court is not going to give a
lessor [sic] in this case.

[DEFENSE COUNSEL]:      And he is requesting that, as a result of
the Texas Penal Code, Article 31.08.

At that point the jury was brought in and the court
read the charge.

            Despite
counsel’s suggestion in this excerpt that a defensive document regarding the
charge had been filed with the court, no such document appears in the
record.  Indeed, appellant’s brief
references no such document.  Nor was any
proposed charge or specific objection language dictated into the court’s
record.  From counsel’s statements alone,
it is impossible to determine exactly what objection or request he was
making.  This lack of specificity is
highlighted by the fact that on appeal appellant contends that two separate
arguments are supported by the same objection: (1) that the charge should have
included a submission on a lesser included offense, and (2) that the court
should have instructed the jury that it could subtract any consideration
appellant gave to the complainants from the value of the property allegedly
stolen.

            Regarding
the lesser included offense argument, we note that counsel’s objection
references no particular offense. 
Instead, he specifically references only section 31.08 of the Texas
Penal Code.  That section contains
several principles to be used in valuing stolen property, but does not contain
any actual offenses.  See Tex.
Pen. Code Ann. § 31.08 (Vernon
1994).  We therefore find that counsel’s
objection was insufficient to preserve any error related to the court’s failure
to include a lesser included offense in the charge.  See Flores v. State, 42 S.W.3d 277, 280 (Tex.
App.—Corpus Christi 2001, no pet.) (finding no preservation of error when
counsel requested “a charge on indecent exposure, a lesser included offense”
but failed to present a written instruction or dictate a requested charge).

            Next,
we turn to the consideration issue. 
Texas Penal Code section 31.08, cited by trial counsel, does include the
following provision: “[i]f the actor proves by a preponderance of the evidence
that he gave consideration for . . . the property . . . stolen, the amount of
the consideration . . . so proven shall be deducted from the value of the
property . . . .”  Tex. Pen. Code Ann. § 31.08(d) (Vernon
1994).  However, counsel failed to
provide the court with any proposed language for the requested charge.  Additionally, appellant referenced section
31.08 only in regard to a lesser included offense, so it is difficult to
determine whether he actually wanted an instruction based on the section itself
or, through operation of the section, some unspecified lesser included
offense.  Cf. Arana v. State, 1 S.W.3d 824, 828 (Tex. App.—Houston [14th
Dist.] 1999, pet. ref’d) (finding appellant failed to preserve jury charge
error on issues buried in proposed charge and not specifically brought to the
court’s attention in conference). 
Accordingly, we find that appellant failed to properly raise his jury
charge arguments below.  The arguments
are therefore waived.

            When
a defendant fails to preserve alleged charge error, we must still examine the
record to determine whether there was, in fact, charge error and, if so,
whether that error caused appellant “egregious harm.”  Mann v.
State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998).  In his brief, appellant only argues that the
consideration he gave the complainants in exchange for their homes should have
been subtracted from the valuation of the properties so as to make the lower
range of appraisals fall within the range requiring a lesser included offense
charge.  We have considered and rejected
these same arguments above in our sufficiency of the evidence discussion.  In short, there is no evidence that appellant
provided the complainants with any consideration that would reduce the amount
of the theft below the range for which he was charged and convicted.  Accordingly, we find that the trial court did
not err in refusing to submit a lesser included offense charge or a charge
under section 31.08(d).[4]  Furthermore, we find that no egregious harm
resulted from the trial court’s actions. 
We overrule issues sixteen and seventeen.

IV.  Self-Representation

            In
issues one and two, appellant contends the trial court violated his
constitutional right to self-representation by failing to address his request
prior to the guilt/innocence phase of the trial.  In issue three, he contends the trial court
erred in failing to properly admonish him regarding self-representation and in
requiring him to proceed pro se in the punishment phase.

 

 

            A
defendant has a constitutional right to appear pro se.  See
Faretta v. California, 422 U.S. 806, 819
(1975) (citing U.S. Const. amend.
VI).[5]  A defendant’s choice of self-representation
must be the result of an informed decision, knowingly and intelligently
made.  Hathorn v. State, 848 S.W.2d 101, 123 (Tex. Crim. App. 1992).  Before a defendant can be found to have
chosen self-representation, the record must demonstrate that he knowingly and
intelligently waived his right to counsel. 
See Funderburg v. State, 717
S.W.2d 637, 642 (Tex. Crim. App. 1986).[6]  Furthermore, although a trial court may allow
hybrid representation, there is no constitutional right to it.  Scarbrough
v. State, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989).  A request to proceed pro se is not effective
if made conditional on the availability of stand-by counsel.  Id. at 93.  The
standard of review is abuse of discretion for a factual determination such as
whether a defendant has elected to represent himself.  DeGroot
v. State, 24 S.W.3d 456, 457–60 (Tex. App.—Corpus Christi 2000, no pet.); see also Cain v. Peters, 972 F.2d 748,
749–50 (7th Cir. 1992) (holding that waiver of the right to
self-representation, after asserted, is a fact-specific issue and subject to a
presumption of correctness).

A.  Guilt/Innocence Phase

            Prior
to trial, appellant submitted a pro se request to act as co-counsel during the
trial.  The trial court did not address
the motion until the appellant raised the issue immediately prior to voir dire
of the jury panel.  The court denied the
motion.  The following exchange then
occurred:

            THE COURT:                        I
have ruled on the motion about being a co-counsel in that matter.  Either he is going to represent you or not if
you want to file a motion to represent yourself that’s a different matter.

            THE DEFENDANT:  I be
happy to [sic], more than happy to write one up.

            THE COURT:                        It’s
too late.  Pretrial dates are over with.

            . . . .

            THE DEFENDANT:  Excuse
me.  I like to put on the record that I
am going to deny the right to represent myself which is . . . my U.S.
Constitutional right . . . . [sic]

            THE COURT:                        Wait
a minute, you did not timely file your request representing yourself the
pretrial date is over.  That request be
denied.  It is on the record.

            THE DEFENDANT:  Sir,
I also like to point out on the record also that at the point and time of that
co-counsel’s motion to represent myself there was—with intent of not dismissing
Fred Reynolds as my counsel.  It was with
the intent of me representing myself in a timely manner.

            THE COURT:                        Just
have a seat, sir.

            THE DEFENDANT:  I
like a ruling on that, sir.

            THE COURT:                        I have ruled.  Have a seat.

            A
request for self-representation is timely if made before the jury is
empaneled.  McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997); Birdwell v. State, 10 S.W.3d 74, 77
(Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  Although we do not approve the trial court’s
erroneous statement of the law regarding timeliness, we find the trial court
did not abuse its discretion in determining that appellant failed to
unequivocally waive his right to counsel. 
See Hathorn, 848 S.W.2d at 123
(right to proceed pro se does not attach until unequivocally made).  Undeterred by the court’s statement,
appellant continued to request that he be allowed to represent himself, and the
court held a hearing on the issue at the beginning of the second day of
trial.  As appellant’s statements in that
hearing amply demonstrate, what he requested when asking for
self-representation was essentially hybrid representation.  He expressed the belief that his right to
self-representation was inseparable from his right to have assistance of
counsel.  He wanted to conduct his
defense, as “first-chair,” and wanted counsel to advise him.  The judge explained repeatedly and carefully
that appellant could either be fully represented by counsel or could represent
himself without any assistance of counsel. 
Appellant, however, steadfastly refused to waive his right to counsel,
saying over and over that he wanted a “lawyer to consult with.”  In light of his refusal to waive his right to
counsel, we conclude that appellant’s offer, prior to voir dire, to file a
motion for self-representation did not constitute an unequivocal waiver of the
right to counsel.[7]  See
Burton v. Collins, 937 F.2d 131, 133–34 (5th Cir. 1991) (holding that
defendant’s statement, “May I represent myself?” was not an unequivocal waiver
where defendant made the inquiry only once); DeGroot v. State, 24 S.W.3d 456, 458–60 (Tex. App.—Corpus Christi
2000, no pet.) (stating that defendant’s statement, “I think I’ll proceed
without an attorney,” should not be taken out of context and holding that it
was not an unequivocal waiver).  The
trial court acted within its discretion in denying hybrid representation.[8]  See
Scarbrough, 777 S.W.2d at 92. 
Accordingly, we overrule issues one and two.

B.  Punishment

            In issue
number three, appellant contends the trial court erred in failing to properly
admonish him before allowing self-representation during the punishment
phase.  Specifically, he contends that
the trial court should have told him that he would not be allowed to retry the
guilt/innocence phase of the trial pro se.

            A
defendant may withdraw a waiver of the right to counsel at any time. 
Walker v. State, 962 S.W.2d 124, 127 (Tex. App.—Houston [1st Dist.]
1997, pet. ref’d) (citing Tex. Code
Crim. Proc. Ann. art. 1.051(h) (Vernon Supp. 2002)); see also Culverhouse v. State, 755
S.W.2d 856, 861 (Tex. Crim. App. 1988) (“A defendant may waive his right to
represent himself once it has been asserted.”). 
In order for the right to counsel to re-attach during trial, the record
must reflect that the defendant waived his right to self-representation. 
Funderburg, 717 S.W.2d at 642. 
However, such waiver is not held to the same stringent standard as the
waiver of the right to counsel, and a waiver may be found if it reasonably
appears that the defendant has abandoned his initial request to represent
himself.  See id.

            Before
the jury returned for the punishment phase of the trial, appellant again
requested that he be allowed to proceed pro se and that stand-by counsel be provided.  The trial judge again informed appellant that
hybrid representation would not be permitted. 
Appellant then unequivocally waived his right to counsel.  The trial judge questioned appellant at
length to ascertain whether waiver was undertaken intelligently, knowingly, and
unconditionally.[9]  When the judge then proceeded into the
punishment phase of trial, appellant objected on the ground that the jury had
been tainted by his actions, presumably during the guilt/innocence phase.  The court specifically told appellant that
the guilt/innocence phase was over and the punishment phase was set to
begin.  Appellant then stated: “Hey, I
object to that.  We cannot proceed into
the punishment phase and me representing myself just in the punishment phase,
sir.  No, sir.  No, sir.”

            A
reasonable interpretation of this excerpt is that appellant did not intend to
revoke his waiver of counsel.  Instead,
it appears that appellant merely desired to represent himself through a new
guilt/innocence phase as well as the eventual punishment phase.  This interpretation is bolstered by the fact
that appellant made no further statements and took no further actions that
could be interpreted as a desire to revoke his waiver of counsel.  Indeed, appellant actively participated in
the punishment phase, making objections, cross-examining the State’s witnesses,
and calling his own witnesses.

            Furthermore,
appellant misinterprets the nature of the admonishments that a trial court must
provide.  Appellant urges us to hold that
the trial court should have told him he would not be entitled to a new
guilt/innocence phase when he waived his right to counsel before the punishment
phase.  To the contrary, a defendant
should be admonished that “there are technical rules of evidence and procedure,
and he will not be granted any special consideration solely because he asserted
his pro se rights.”  Johnson v. State, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988); see also Freeman v. State, 970 S.W.2d
55, 57 (Tex. App.—Tyler 1998, no pet.). 
And the trial court did so admonish the appellant.[10]  Appellant cites no cases and we have not
found any suggesting that the trial court is required to inform the appellant
regarding the particular procedural consequences of his decision to proceed pro
se.  The trial judge’s responsibility is
to ensure that the waiver of counsel is done intelligently and knowingly, with
awareness of the dangers and disadvantages of self-representation, and with
eyes wide open.  Faretta, 422 U.S. at 835; Robertson
v. State, 934 S.W.2d 861, 864 (Tex. App.—Houston [14th Dist.] 1996, no
pet.).  The record reflects that the
trial court did just that.  Accordingly,
we overrule issue three.

V.  Punishment Before Jury

            In
issue four, appellant contends that the trial court erred by proceeding to the
punishment phase when he did not elect to have the jury assess punishment prior
to jury selection.  Generally, after a
finding of guilt, the judge is to assess punishment unless the defendant
elects, in writing and prior to voir dire of the jury panel, to have the jury
assess punishment.  See Tex. Code Crim. Proc.
Ann. art. 37.07(2)(b) (Vernon Supp. 2002).  The defendant may subsequently change his
election but only if the prosecutor consents to the change.  Id.  Furthermore, a court cannot require a
defendant to proceed to punishment to the jury when the defendant never requested that the jury assess
punishment.  Gibson v. State, 549 S.W.2d 741, 742–43 (Tex. Crim. App.
1977).  However, the dictates of article
37.07 are not considered jurisdictional or protective of fundamental rights,
and, therefore, they are waived if no objection is made.  See
State v. Baize, 947 S.W.2d 307, 311 (Tex. App.—Amarillo 1997) (citing Dickson v. State, 492 S.W.2d 267, 270
(Tex. Crim. App. 1973)), aff’d, 981
S.W.2d 204 (Tex. Crim. App. 1998).

            In
the present case, appellant filed no written election regarding who was to
assess punishment.  However, the record
clearly indicates that, after the jury returned with a verdict of guilty,
defense counsel requested that punishment be assessed by the jury.  The State did not consent to this late
election and, in fact, expressly objected to it.  The State’s objection, however, only
preserved complaint on behalf of the State. 
See Benson v. State, 496
S.W.2d 68, 70 (Tex. Crim. App. 1973) (finding that error in permitting
defendant to file election after commencement of trial did not violate
defendant’s constitutional rights because error was against the State and not
the defendant); 43 George E. Dix &
Robert O. Dawson, Texas Practice: Criminal Practice & Procedure § 38.20
(2d ed. 2001) (citing Benson).

            Regardless,
appellant contends that, after he began his pro se representation and
immediately before proceeding to the punishment phase, he made an objection to
the assessment of punishment by the jury through the following language:

Your Honor,
I object to that for—based on the grounds that the jury have been tainted,
their minds have been poisoned due to the fact of my actions, and I feel that
that jury should be dismissed and we bring another jury.

            It is
clear from this statement that appellant was not complaining that the jury, as
opposed to the judge, was to assess punishment. 
To the contrary, the appellant requests that another jury be seated.  Appellant’s complaint on appeal does not
comport with his objection in the trial court.  See Bell v. State, 938
S.W.2d 35, 54 (Tex. Crim. App. 1996) (objection stating one legal basis may not
be used to support different legal theory on appeal).  Accordingly, we overrule issue four.

            The
judgment of the trial court is affirmed.

 

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Opinion filed August 29,
 2002.

Panel
consists of Justices Brister, Seymore, and Guzman.

Do
Not Publish — Tex. R. App. P.
47.3(b).

 











            [1]  It should be noted that the State quibbles
with appellant’s numbers in several respects, including which appraisal numbers
should be used.  The State also contends
that one of the loans appellant claims to have paid on behalf of one of the
complainants was actually appellant’s own student loan.  Additionally, appellant’s figures do not
include amounts paid to him by the complainants.  However, we need not derive an exact sum or
range of sums to resolve the issues raised in this appeal.





            [2]  Appellant makes no claims regarding any
reduction in interest rates.





            [3]  This figure is apparently based on the
closing costs incurred by appellant when he used the properties to secure loans
for himself.





            [4]  Appellant cites to no cases, and we have
discovered none, in which a court held that an instruction under section
31.08(d) was required or even permissible. 
However, we need not address the question because the evidence does not
raise the issue in the present case.





            [5]  Appellant also claims that the court violated
his state constitutional rights, citing Tex.
Const. art. I, § 10, and
DeValentino v. State, 807 S.W.2d 382 (Tex. App.—Houston [1st Dist.] 1991,
no pet.).  However, the court in DeValentino refused to address
self-representation claims under the Texas Constitution.  807 S.W.2d at 384.  Appellant cites no other cases and makes no
arguments suggesting that his rights under the Texas Constitution are any
different than those under the U.S. Constitution.  Accordingly, we will not address those claims
separately.  See Garcia v. State, 919 S.W.2d 370, 395 n.4 (Tex. Crim. App.
1994).





            [6]  “Indeed, it is a principle [sic] difference
between the right to counsel and the right to self-representation that the
former is in effect until waived whereas the latter is not in effect unless asserted.”  Oliver
v. State, 872 S.W.2d 713, 715 n.1 (Tex. Crim. App. 1994).





            [7]  Another court of appeals addressed a similar
situation in Garrett v. State, 998
S.W.2d 307 (Tex. App.—Texarkana 1999, pet.
ref’d – untimely filed).  In that
case, the defendant attempted to request self-representation and waive his
right to counsel prior to voir dire, but the court denied the request.  Id.
at 316.  After voir dire, the trial court
reconsidered its decision and granted the request, but the defendant expressed
satisfaction with his counsel and requested counsel be permitted to continue
the representation.  Id.  The court of appeals
held that the defendant’s request for counsel effectively retracted or waived
his earlier request for self-representation. 
Id. at 317.  The court, therefore, did not consider whether
there was error committed in allowing counsel to represent the defendant during
voir dire.  See id.  But cf. Nelson v. State, 810 S.W.2d 753, 754-55 (Tex. App.—Dallas
1991, pet. ref’d) (finding reversible error in denial of right to
self-representation where request was made before voir dire but not granted
until after voir dire).  We do not find a
retraction in the present case because we find that appellant never made an
unequivocal waiver of his right to counsel.





            [8]  Furthermore, had appellant unequivocally
waived his right to counsel during the hearing, the trial court could have
dismissed the jury and begun the trial anew.





            [9]  Appellant stated that he had “[f]ive years of
college” and that he had worked as a paralegal for fourteen and a half
years.  He further acknowledged that he
had been previously tried in a criminal matter.





            [10]  The court informed appellant that he must
follow the rules of procedure and evidence and that he would not receive any
help from the court.  The court further
told him that he may waive his right to appeal by representing himself and
admonished him regarding the potential range of punishment.