PD-0596-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/9/2015 12:55:26 AM
Accepted 7/9/2015 4:52:20 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-0596-15

# *Terrish Jermaine Garmon, Appellant,*
# *v.*
# *State of Texas, Appellee.*

**On Discretionary Review from No. 05-13-00702-CR**
**Fifth Court of Appeals**

**On Appeal from No. F12-34332**
**Criminal District Court No. 3, Dallas County**

# Petition for Discretionary Review

**Michael Mowla**
**445 E. FM 1382 #3-718**
**Cedar Hill, Texas 75104**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

July 9, 2015

ABEL ACOSTA, CLERK

# *Oral Argument Requested*

## I. Identity of Parties, Counsel, and Judges

Terrish Jermaine Garmon, Appellant

Michael Mowla, attorney for Appellant on appeal and on discretionary review

J. Paul Rosemergy, Attorney for Appellant at trial

State of Texas, Appellee

Susan Hawk, Dallas County District Attorney, Attorney for Appellee

Lori Ordiway, Dallas County Assistant District Attorney, Attorney for Appellee

Lisa Smith, Dallas County Assistant District Attorney, Attorney for Appellee

Rebecca Ott, Dallas County Assistant District Attorney, Attorney for Appellee

Marcia T. Taylor, Dallas County Assistant District Attorney, Attorney for Appellee

Brandie Wade, Dallas County Assistant District Attorney, Attorney for Appellee

Hon. Gracie Lewis, Presiding Judge of Criminal District Court No. 3

## II. Table of Contents

I.     Identity of Parties, Counsel, and Judges........................................................2

II.    Table of Contents.............................................................................................3

III.   Table of Authorities.........................................................................................5

IV.   Appendix Index ................................................................................................7

V.    Statement Regarding Oral Argument ..............................................................8

VI.   Statement of the Case .....................................................................................9

VII.  Procedural History.........................................................................................10

VIII. Grounds for Review........................................................................................12

IX.   Argument .......................................................................................................13

    **1.** Ground for Review One: The court of appeals erred because it ruled that the trial court did not abuse its discretion when it allowed 404(b) evidence during the innocence/guilt phase of the trial.  Whether through the "doctrine of chances" or some other theory, 404(b) evidence (evidence of collateral crimes or wrongful acts) may be admitted during the innocence/guilt phase of a trial if: (1) the evidence is shown to be both material and relevant to a contested issue in the case; and (2) it is proven beyond a reasonable doubt that the defendant committed the collateral crimes or wrongful acts.  Here, the trial court abused its discretion by admitting the 404(b) acts because the state failed to prove beyond a reasonable doubt that Appellant committed them.  This Court should also rule that extraneous acts admitted under the doctrine of chances must be proven beyond a reasonable doubt. ........................................................................13

        **i.**     The court of appeals failed to consider that: (1) the state did not prove beyond a reasonable doubt that Appellant committed the 404(b) acts that were introduced during the innocence/guilt phase of the trial, and (2) the evidence supporting charged offense itself was minimal and did not constitute proof beyond a reasonable doubt.....................13

        **ii.**    This Court should rule that extraneous acts admitted under the doctrine of chances must be proven beyond a reasonable doubt.........................................................17

3

**2.** Ground for Review Two: The court of appeals erred when it ruled that the evidence was legally sufficient to prove that Appellant committed Burglary of a Habitation because the State failed to prove that without the effective consent of the Complaining Witness, Appellant: (1) entered the habitation of the Complaining Witness with intent to commit a felony, theft, or an assault; or (2) remained concealed, with intent to commit a felony, theft, or an assault, in the habitation of the Complaining Witness; or (3) entered the habitation of the Complaining Witness and committed or attempted to commit a felony, theft, or an assault..................................................20

X.    Conclusion and Prayer.................................................................20

XI.   Certificate of Service .................................................................22

XII.  Certificate of Compliance with Tex. Rule App. Proc. 9.4 ...........................22

## III. Table of Authorities

**Cases**

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ............................... 16, 20

*Cantrell v. State*, 731 S.W.2d 84 (Tex. Crim. App. 1987) ....................................18

*Ernster v. State*, 308 S.W.2d 33 (Tex. Crim. App. 1957)......................................19

*Garmon v. State*, 05-13-00702-CR, 2015 Tex. App. LEXIS 4809
(Tex. App. Dallas, May 12, 2015) (memorandum opinion) .......... 7, 9, 11, 14

*George v. State*, 890 S.W.2d 73 (Tex. Crim. App. 1994)........................................19

*Harrell v. State*, 884 S.W.2d 154 (Tex. Crim. App. 1994).....................................19

*Harris v. State*, 790 S.W.2d 568 (Tex. Crim. App. 1990)......................................20

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ........................................19

*Jackson v. Virginia*, 443 U.S. 307 (1979)........................................................ 16, 20

*Jones v. State*, 751 S.W.2d 682 (Tex. App. San Antonio 1988, *no pet*.)................18

*Jurek v. State*, 522 S.W.2d 934 (Tex. Crim. App. 1975) (*Id*. at 944,
Odom, J. dissenting; and *id*. at 947-948, Roberts, J. dissenting) .................18

*Lankford v. State*, 248 S.W. 389 (Tex. Crim. App. 1923).......................................19

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) ................................ 16, 20

*Morgan v. State*, 692 S.W.2d 877 (Tex. Crim. App. 1985)....................................18

*Phillips v. State*, 659 S.W.2d 415 (Tex. Crim. App. 1983) ....................................20

*Plante v. State*, 692 S.W.2d 487 (Tex. Crim. App. 1985) ......................................17

*Scott v. State*, 720 S.W.2d 264 (Tex. App. Austin 1986) .......................................18

*Thompson v. State*, 615 S.W.2d 760 (Tex. Crim. App. 1981)..................................19

*Vaughn v. State*, 118 S.W.2d 312 (Tex. Crim. App. 1938) .....................................19

**Statutes**

Tex. Pen. Code § 30.02 (2012) ................................................................................10

**Rules**

Tex. Rule App. Proc. 66.3 (2015).............................................................................21

Tex. Rule App. Proc. 68.11 (2015)...........................................................................22

Tex. Rule App. Proc. 68.4 (2015) ........................................................................ 8, 12

Tex. Rule App. Proc. 9.4 (2015)................................................................22

Tex. Rule App. Proc. 9.5 (2015)................................................................22

Tex. Rule Evid. 404(b) (2015)......................................................... 15, 16

**IV. Appendix Index**

*Garmon v. State*, 05-13-00702-CR, 2015 Tex. App. LEXIS 4809 (Tex. App. Dallas, May 12, 2015) (memorandum opinion)

## V.  Statement Regarding Oral Argument

Should this Court grant this petition, Appellant requests oral argument. *See* Tex. Rule App. Proc. 68.4(c) (2015).  Appellant believes that the facts and legal arguments are adequately presented in this petition.  However, the issue of whether the state must prove beyond a reasonable doubt 404(b) evidence supporting a theory of the doctrine of chances appears to be one of first impression.  Therefore, should this Court determine that its decisional process will be significantly aided by oral argument, Appellant will be honored to present oral argument.

**To The Honorable Judges of the Court of Criminal Appeals:**

Appellant Terrish Jermaine Garmon respectfully submits this petition for discretionary review:

## VI. Statement of the Case

This petition requests that this Court review the *Memorandum Opinion* and judgment of the Fifth Court of Appeals in *Garmon v. State*, 05-13-00702-CR, 2015 Tex. App. LEXIS 4809 (Tex. App. Dallas, May 12, 2015) (memorandum opinion), in which the court of appeals affirmed Appellant's conviction for Burglary of a Habitation. In this petition, Appellant will argue that whether through the "doctrine of chances" or some other theory, 404(b) evidence (evidence of collateral crimes or wrongful acts) may be admitted during the innocence/guilt phase of a trial if: (1) the evidence is shown to be both material and relevant to a contested issue in the case; and (2) it is proven beyond a reasonable doubt that the defendant committed the collateral crimes or wrongful acts. Appellant will thus argue that the trial court abused its discretion by admitting the 404(b) acts because the state failed to prove beyond a reasonable doubt that Appellant committed them. And as a result, the court of appeals erred because it ruled that the trial court did not abuse its discretion when it allowed 404(b) evidence during the innocence/guilt phase of the trial.

Finally, Appellant will argue that this Court should rule that extraneous acts admitted under the doctrine of chances must be proven beyond a reasonable doubt.

## VII. Procedural History

Appellant was indicted for Burglary of a Habitation. (RR2, 7-8; CR, 14).[1] The indictment alleged that on or about May 26, 2012, in Dallas County, Texas, with the intent to commit a theft or attempt to commit a theft, Appellant intentionally and knowingly entered the habitation of Jude Garcia without the effective consent of Jude Garcia. (RR2, 7-8; CR, 14). The indictment further alleged that prior to the commission of this offense, Appellant was finally convicted of two other felony offenses: (1) on October 7, 2005, under cause number F04-15083, in Criminal District Court Number 4 of Dallas County, Texas, Appellant was finally convicted of the felony offense of Evading Arrest by a Motor Vehicle; and (2) on February 13, 2003, under cause number F02-24970, in the 204th Judicial District Court of Dallas County, Texas, Appellant was finally convicted of the felony offense of Burglary of a Habitation. (RR2, 7-8; CR, 14).

Appellant pleaded "not guilty." (RR2, 8). After a trial before a jury, on April 25, 2013, Appellant was convicted by the jury of Burglary of a Habitation. (RR5, 5; CR, 78-80); *see* Tex. Pen. Code § 30.02 (2012). On the same day,

---

[1] The Clerk's Record, which is comprised of a single volume, is referenced throughout this Brief as "CR" followed by the page number of the Clerk's Record. The Reporter's Record, which is comprised of seven volumes, is referenced throughout this Brief as "RR" followed by the volume number and page number.

Appellant was sentenced to 15 years in prison to the Texas Department of Criminal Justice, Institutional Division, and was fined $10,000.00. (RR5, 63; CR, 78-80)

Appellant appealed the judgment of conviction and sentence to the Fifth Court of Appeals. On May 12, 2015, the Court of Appeals affirmed the judgment of conviction and sentence. *See Garmon v. State*, 05-13-00702-CR, 2015 Tex. App. LEXIS 4809 (Tex. App. Dallas, May 12, 2015) (memorandum opinion). This petition for discretionary review follows.

## VIII. Grounds for Review

**Ground for Review One:** The court of appeals erred because it ruled that the trial court did not abuse its discretion when it allowed 404(b) evidence during the innocence/guilt phase of the trial. Whether through the "doctrine of chances" or some other theory, 404(b) evidence (evidence of collateral crimes or wrongful acts) may be admitted during the innocence/guilt phase of a trial if: (1) the evidence is shown to be both material and relevant to a contested issue in the case; and (2) it is proven beyond a reasonable doubt that the defendant committed the collateral crimes or wrongful acts. Here, the trial court abused its discretion by admitting the 404(b) acts because the state failed to prove beyond a reasonable doubt that Appellant committed them. This Court should also rule that extraneous acts admitted under the doctrine of chances must be proven beyond a reasonable doubt.

**Ground for Review Two:** The court of appeals erred when it ruled that the evidence was legally sufficient to prove that Appellant committed Burglary of a Habitation because the State failed to prove that without the effective consent of the Complaining Witness, Appellant: (1) entered the habitation of the Complaining Witness with intent to commit a felony, theft, or an assault; or (2) remained concealed, with intent to commit a felony, theft, or an assault, in the habitation of the Complaining Witness; or (3) entered the habitation of the Complaining Witness and committed or attempted to commit a felony, theft, or an assault.

The relevant pages of the record are:

Clerk's Record: 14, 78-80

Reporter's Record: RR2, 7-18; RR4, 3-44, 51-80, 89, 98, 110, 119-120, 130-169, 173-177, 186-195, 203-206, 212-218, 230; RR5, 63

*See* Tex. Rule App. Proc. 68.4(f) (2015).

## IX. Argument

1. **Ground for Review One: The court of appeals erred because it ruled that the trial court did not abuse its discretion when it allowed 404(b) evidence during the innocence/guilt phase of the trial. Whether through the "doctrine of chances" or some other theory, 404(b) evidence (evidence of collateral crimes or wrongful acts) may be admitted during the innocence/guilt phase of a trial if: (1) the evidence is shown to be both material and relevant to a contested issue in the case; and (2) it is proven beyond a reasonable doubt that the defendant committed the collateral crimes or wrongful acts. Here, the trial court abused its discretion by admitting the 404(b) acts because the state failed to prove beyond a reasonable doubt that Appellant committed them. This Court should also rule that extraneous acts admitted under the doctrine of chances must be proven beyond a reasonable doubt.**

   i. **The court of appeals failed to consider that: (1) the state did not prove beyond a reasonable doubt that Appellant committed the 404(b) acts that were introduced during the innocence/guilt phase of the trial, and (2) the evidence supporting charged offense itself was minimal and did not constitute proof beyond a reasonable doubt.**

The burglary charged in the indictment was committed in Irving, Texas. (RR4, 51-52). Garcia, the complaining witness, listed his motorcycle on Craigslist. (RR4, 49-52, 72). Garcia took a picture of the motorcycle and posted it on Craigslist along with his phone number and full name. (RR4, 65). He did not know how many times the advertisement was viewed by different individuals. (RR4, 65). The advertisement was on Craigslist for about three days. (RR4, 65). Garcia received one call for the purchase of the motorcycle from a person who never showed up. (RR4, 55-57, 72).

The next morning, Garcia called the person back and asked if he still wanted to buy the motorcycle. (RR4, 57, 102). The person said "no," that he already purchased another one, and hanged up. (RR4, 57, 74). Garcia then noticed two circular holes in each of his garage doors, and that his motorcycle was gone. (RR4, 58-60, 95-96). Garcia pulled up one of the doors, and discovered that the motorcycle was gone. No fingerprints were found in the garage. (RR4, 89, 98, 110, 137). No other evidence was presented by the state supporting Appellant's guilt.

As the court of appeals held, like the charged offense, the stolen items in the two other burglary cases was a motorcycle. *Garmon*, *id*. at *15. And in all three extraneous offenses, the motorcycle owner had placed the bike for sale on Craigslist. *Id*. at *15-16. In all three cases, the owner gave the address where the motorcycle was located out to only one person, and each time the person did not show up. *Id*. at *16.

In all the cases, the only conclusive evidence tying Appellant to the offense was the phone number of the person who called to set up a time to come to see the motorcycle, which was Appellant's number. *Id*. at *16. Based on this evidence alone, the court of appeals found that "[T]he characteristics of the charged offense and the uncharged offenses are so distinctively similar that they constitute appellant's signature or modus operandi." *Id*. at *16. The court of appeals also

14

found that "(Appellant's) cell phone number was used to contact the owners of the motorcycles, and in each case, he was the only person to whom the bike owner gave the location of the bike. That appellant would be the only person to get the address of a motorcycle and for that motorcycle to disappear that same night in a similar way each time is such a highly unusual event it is unlikely to happen by coincidence." *Id.* at *16.

As a result, the court of appeals concluded that "[A] jury could have found beyond a reasonable doubt that appellant committed the three unadjudicated offenses. Likewise, the trial court did not abuse its discretion in determining that the uncharged offenses were admissible under rule 404(b) to show identity." *Id.* at *16; *see* Tex. Rule Evid. 404(b) (2015).

However, the phone that was tied to Appellant was the only evidence the court of appeals appears to have relied upon. Under a lawful search at Appellant's home based upon a search warrant, the police found no motorcycles. (RR4, 128-129, 137-139). Nor were any cutting or "chopping" tools that are used to remove parts from a motorcycle found. (RR4, 139, 145-146). Although some motorcycle parts were found, but none were identified as stolen parts. (RR4, 128, 145).

No evidence was presented showing whether anybody contacted Craigslist to determine who viewed the advertisements. (RR4, 136, 176, 180). No evidence showed that Appellant was at any of the homes where the burglaries occurred.

(RR4, 136). Nobody testified that Appellant was seen in any of the neighborhoods where the homes are located. (RR4, 136). No surveillance video was presented showing Appellant or even a possible suspect in or around any of the homes. (RR4, 137).

In summary, the court of appeals reasoned that because a phone was tied to Appellant, the evidence was legally sufficient to prove not only that Appellant committed the charged offense in Irving, but that he also committed the 404(b) offenses. This phone could have been used by any person to make the contacts with the complaining witnesses. Therefore, the fact that the phone was tied to Appellant was not legally sufficient evidence of either the charged offense or the 404(b) offenses. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009), *quoting Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). And as a result, the court of appeals failed to consider that: (1) the state did not prove beyond a reasonable doubt that Appellant committed the 404(b) acts that were introduced during the innocence/guilt phase of the trial, and (2) the evidence supporting charged offense itself was minimal and did not constitute proof beyond a reasonable doubt.

**ii. This Court should rule that extraneous acts admitted under the doctrine of chances must be proven beyond a reasonable doubt.**

The "doctrine of chances" is a theory that is used by the state to admit extraneous offenses based on the theory that unusual events are unlikely to repeat themselves by happenstance. In *Plante*, the doctrine was described by this Court as follows:

> "Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but that the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them...It is at least necessary that prior acts should be similar. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance... In short, there must be a similarity in the various instances in order to give them probative value."

*Plante v. State*, 692 S.W.2d 487, 491-492 (Tex. Crim. App. 1985). Prior to *Plante*, in *Jurek*, this Court described the doctrine in separate dissents as follows:

> "In the doctrine of chances, probability is the likelihood of the occurrence of an event, or the quotient obtained by dividing the number of favorable chances by the whole number of chances... In the doctrine of chance, the likelihood of the occurrence of any particular form of an event, estimated as the ratio of the number of ways in which that form might occur to the whole number of ways in which the event might occur in any form (all such elementary forms being assumed as equally probable)...
>
> ...the limit of the ratio of the frequency of that form of the event to the entire frequency of the event in all forms as the number of trials is increased indefinitely. Thus, as an unweighted die thrown up may fall

17

equally well with any of its six faces up, there are six ways of happening; the ace can turn up in only one way; the chance of the ace is 1 out of 6 (1/6)."

*See Jurek v. State*, 522 S.W.2d 934 (Tex. Crim. App. 1975) (*Id*. at 944, Odom, J. dissenting; and *id*. at 947-948, Roberts, J. dissenting); *see also Morgan v. State*, 692 S.W.2d 877, 881-882 (Tex. Crim. App. 1985) (Under the doctrine of chances theory, this Court found that it was proper to admit evidence of the defendant's touching of the genitals of the complaining witness and her sister on occasions that were not part of the charged offense) *and Jones v. State*, 751 S.W.2d 682, 683-685 (Tex. App. San Antonio 1988, *no pet*.) (Doctrine of chances allowed admission of evidence showing that a disproportionate number of infant deaths occurred during the defendant's shift for the purposes of showing that the defendant intentionally caused injury to the complaining witness infant).

Underlying the doctrine of chances is that whatever the extraneous act is that was allegedly committed, no matter how unusual the events are such that they are unlikely to repeat themselves by happenstance, the state still must prove beyond a reasonable doubt that the defendant committed the extraneous act that constitutes the highly unusual events and thus supports the doctrine of chances. *See Scott v. State*, 720 S.W.2d 264, 266-267 (Tex. App. Austin 1986) and *Cantrell v. State*, 731 S.W.2d 84, 90-91 (Tex. Crim. App. 1987) (The defendant was clearly identified and shown to be the perpetrator of the extraneous offense. Both the charged and

extraneous offenses were aggravated robberies committed at private residences, at approximately the same time of the morning. Both were committed at gunpoint shortly after the victim had awaken or was getting ready to go to work. There were sufficient common similar characteristics between the offenses). Circumstantial evidence often supports admitting 404(b) evidence under the doctrine of chances, and the admissibility of an event based on the doctrine is based on the rules that circumstantial evidence: (1) is as probative as direct evidence in establishing the guilt of a defendant, and (2) alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).

Finally, like any other 404(b) act, any extraneous act that is admitted under the doctrine of chances must be proven beyond a reasonable doubt. Texas law has for years required a charge instructing the jury that, before they can consider evidence of extraneous bad acts, they must find beyond a reasonable doubt that the defendant committed those acts. *See George v. State*, 890 S.W.2d 73, 75 (Tex. Crim. App. 1994) (The standard for admissibility of an extraneous offense is proof beyond a reasonable doubt that the defendant committed the offense); *Thompson v. State*, 615 S.W.2d 760, 761 (Tex. Crim. App. 1981); *Lankford v. State*, 248 S.W. 389, 389-390 (Tex. Crim. App. 1923); *Ernster v. State*, 308 S.W.2d 33, 34-35 (Tex. Crim. App. 1957); *Vaughn v. State*, 118 S.W.2d 312, 313 (Tex. Crim. App. 1938); *Harrell v. State*, 884 S.W.2d 154, 157 (Tex. Crim. App. 1994); *Harris v.*

19

*State*, 790 S.W.2d 568, 602-603 (Tex. Crim. App. 1990); *Phillips v. State*, 659 S.W.2d 415, 418 (Tex. Crim. App. 1983).

2. <u>Ground for Review Two</u>: **The court of appeals erred when it ruled that the evidence was legally sufficient to prove that Appellant committed Burglary of a Habitation because the State failed to prove that without the effective consent of the Complaining Witness, Appellant: (1) entered the habitation of the Complaining Witness with intent to commit a felony, theft, or an assault; or (2) remained concealed, with intent to commit a felony, theft, or an assault, in the habitation of the Complaining Witness; or (3) entered the habitation of the Complaining Witness and committed or attempted to commit a felony, theft, or an assault.**

In Ground for Review One, Appellant provided the facts supporting the conviction for the charged offense that were relied upon by the jury. Appellant showed that when a reviewing court considers the evidence, the court of appeals could not have found that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Laster*, 275 S.W.3d at 517; *Jackson*, 443 U.S. at 318-319; *Brooks*, 323 S.W.3d at 912. Because further briefing will likely not be helpful to this Court, Appellant reasserts this issue here and asks this Court to rule that the court of appeals erred on this issue.

## X.  Conclusion and Prayer

For the reasons stated in this petition, the Court of Appeals has: (1) decided an important question of state and federal law that has not been, but should be, settled by the Court of Criminal Appeals; (2) decided an important question of

state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States; and (3) misconstrued a statute. *See* Tex. Rule App. Proc. 66.3 (b)-(d) (2015).

Appellant respectfully prays that this Court grant discretionary review, rule that extraneous acts admitted under the doctrine of chances must be proven beyond a reasonable doubt, reverse the judgment of conviction and sentence, and enter a judgment of acquittal. In the alternative, Appellant prays that this Court reverse the judgment of conviction and sentence and remand this case back to the trial court for a new trial.

Respectfully submitted,

Michael Mowla
445 E. FM 1382 No. 3-718
Cedar Hill, Texas 75104
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

**/s/ Michael Mowla**
By: Michael Mowla

21

## XI. Certificate of Service

This certifies that on July 9, 2015, a copy of this document was served on Lori Ordiway and Lisa Smith of the Dallas County District Attorney's Office, Appellate Division, 133 N. Riverfront Boulevard, Dallas, Texas 75207 by email to lori.ordiway@dallascounty.org, lisa.smith@dallascounty.org, and DCDAAppeals@dallascounty.org; and also on Rebecca Ott at Rebecca.ott@dallascounty.org; and on Lisa McMinn, the State Prosecuting Attorney, by email to Lisa.McMinn@spa.texas.gov, and John Messinger, Assistant State Prosecuting Attorney, by email to john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

## XII. Certificate of Compliance with Tex. Rule App. Proc. 9.4

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 4,500 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 2,551 words in the document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented (grounds for review section), statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using 14-point font. *See* Tex. Rule App. Proc. 9.4 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

# APPENDIX

# *Garmon v. State*

Court of Appeals of Texas, Fifth District, Dallas

May 12, 2015, Opinion Filed

No. *05-13-00702-CR*

**Reporter**
2015 Tex. App. LEXIS 4809

TERRISH JERMAINE GARMON, Appellant v. THE STATE OF TEXAS, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On Appeal from the Criminal District Court No. 3, Dallas County, Texas. Trial Court Cause No. F-1234332-J.

## Core Terms

motorcycle, extraneous, offenses, burglary, holes, garage, bike, stolen, phone number, trial court, garage door, admissible, phone, unadjudicated, habitation, charged offense, guilt, night, attempted burglary, unauthorized use, probative value, motor vehicle, remoteness, records, beyond a reasonable doubt, presenting evidence, uncharged offense, prior conviction, evading arrest, outweighed

## Case Summary

### Overview

HOLDINGS: [1]-The characteristics of the charged offense and the uncharged offense were so distinctively similar that they constituted defendant's signature or modus operandi; [2]-The circumstances under which defendant came to be in possession of the motor vehicle, a motorcycle, were similar to the charged offense; [3]-Viewed in isolation, the fact that the victim's motorcycle was stolen the night defendant called about it could be seen as mere coincidence, but evidence that three other homes with motorcycles for sale had been broken into the same night defendant called about the motorcycles, suggested it was not mere chance; [4]-The potential for any unfair prejudice or confusion of the issues based on the admission of this evidence was slight; [5]-The combined and cumulative force of all the incriminating circumstances was sufficient to support defendant's burglary conviction.

### Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Evidence > Admissibility > Conduct Evidence > Prior Acts, Crimes & Wrongs

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > Evidence

*HN1* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith, *Tex. R. Evid. 404(b)*. It may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Whether extraneous offense evidence has relevance apart from character conformity is a question for the trial court. Thus, a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. Further, a trial court cannot admit extraneous offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense.

Evidence > Admissibility > Conduct Evidence > Prior Acts, Crimes & Wrongs

*HN2* One of the main rationales for admitting extraneous offense evidence is to prove the identity of the offender. The theory of relevancy is usually that of modus operandi in which the pattern and characteristics of the charged crime and uncharged misconduct are so distinctively similar that they constitute a "signature." o rigid rules dictate what constitutes sufficient similarities. Common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress or any other elements which mark both crimes as having been committed by the same person. The doctrine of chances may also come into play when using extraneous offenses to prove identity. That doctrine tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance. For the doctrine to apply, there must be a similarity between the charged and extraneous offenses, since it is the improbability of a like result being repeated by mere chance that gives the extraneous offense its probative weight.

Evidence > Relevance > Exclusion of Relevant Evidence > Confusion, Prejudice & Waste of Time

*HN3* Relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence, *Tex. R. Evid. 403*.

Evidence > Relevance > Exclusion of Relevant Evidence > Confusion, Prejudice & Waste of Time

Criminal Law & Procedure > ... > Standards of Review > Abuse of Discretion > Evidence

*HN4* *Tex. R. Evid. 403* favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. Unfair prejudice refers not to an adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis. When undertaking a *rule 403* analysis, the trial court must balance 1) the inherent probative force of the proffered evidence along with 2) the proponent's need for that evidence against 3) any tendency of the evidence to suggest decision on an improper basis, 4) any tendency of the evidence to confuse or distract the jury from the main issues, 5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and 6) the

likelihood that presentation of the evidence will consume an inordinate amount of time or be repetitive. As with *Tex. R. Evid. 404(b)*, the appellate court reviews a trial court's decision to admit evidence in the face of a 403 objection under an abuse of discretion standard, and the court does not abuse its discretion as long as its decision is within the zone of reasonable disagreement.

> Evidence > Admissibility > Conduct Evidence > Prior Acts, Crimes & Wrongs

> Evidence > Relevance > Exclusion of Relevant Evidence > Confusion, Prejudice & Waste of Time

*HN5* Regarding remoteness of the conviction, *Tex. R. Evid. 404(b)* contains no restrictions on how recent an extraneous offense must be to be admissible. Remoteness is an element of an offense's probative value under *Tex. R. Evid. 403*. Remoteness alone is not a reason for the exclusion of extraneous offense evidence. But it can significantly lessen the probative value of such evidence because the passage of time allows people to change.

> Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

> Evidence > Admissibility > Circumstantial & Direct Evidence

> Criminal Law & Procedure > ... > Standards of Review > Deferential Review > Credibility & Demeanor Determinations

*HN6* When reviewing the sufficiency of the evidence, the appellate court considers all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

**Counsel:** For Appellants: Michael Mowla, Cedar Hill, TX.

For Appellees: Rebecca Ott, Susan Hawk, Dallas, TX.

**Judges:** Before Justices Lang-Miers, Brown, and Schenck.[1] Opinion by Justice Brown.

**Opinion by:** ADA BROWN

# Opinion

**MEMORANDUM OPINION**

Opinion by Justice Brown

Terrish Jermaine Garmon appeals his conviction for burglary of a habitation in Irving, Texas, owned by Jude Garcia. A jury found appellant guilty and assessed his punishment at fifteen years'

---

[1]   Justice David Schenck succeeded Justice Michael O'Neill, a member of the original panel, following Justice O'Neill's retirement. Justice Schenck has reviewed the briefs and the record before the Court. See TEX. R. APP. P. 41.1(a).

confinement and a $10,000 fine. In two issues on appeal, appellant contends the trial court abused its discretion in admitting evidence of four extraneous offenses and contends the evidence is insufficient to prove he committed the charged offense. For reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

Appellant was indicted for burglary of Garcia's habitation under two alternative theories. The indictment alleged he intentionally and knowingly entered the habitation without Garcia's effective consent, with the intent to commit [*2] theft. It also alleged appellant intentionally and knowingly entered the habitation without Garcia's effective consent and committed and attempted to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a) (West 2011). Appellant entered a plea of not guilty.

Before voir dire, the State asked the trial court to allow it to present evidence of unadjudicated extraneous offenses under the theories of doctrine of chances and modus operandi. The prosecutor described three unadjudicated offenses committed in a manner similar to the charged burglary and asserted those offenses were admissible to prove appellant committed the instant offense. The trial court made a preliminary ruling that the evidence was relevant and that its probative value outweighed its prejudicial effect, subject to the State proving up the allegations. After jury selection, the trial court held a hearing outside the presence of the jury at which the State put on evidence of the unadjudicated extraneous offenses — two burglaries in Grand Prairie and Fort Worth and one attempted burglary in Coppell.[2] The State also presented evidence of appellant's 2005 conviction for unauthorized use of a motor vehicle that it wished to introduce at guilt/innocence. [*3] Appellant objected to the evidence under *rules of evidence 404(b)* and *403*. The court reaffirmed its earlier ruling allowing the evidence of the unadjudicated offenses and also ruled it would allow evidence of the prior conviction.

## The Irving Burglary/Charged Offense

At trial, Jude Garcia testified that in 2012, he owned a motorcycle, described as a "supersport" bike, that he wanted to sell. Garcia posted an ad on Craigslist with a description and pictures of the bike. The ad included Garcia's cell phone number, but not his address. Only one person called Garcia in response to the ad, and that man wanted to come look at the bike. Garcia gave the man his address in Irving, but he did not show up or call to cancel. The next morning, May 26, 2012, Garcia called the man back to ask if he was still interested. The man said he was no longer interested and "kind of laugh[ed]" at Garcia and hung up. When Garcia left his house later, he noticed two holes in his garage doors. When he opened the garage, his bike was gone. The holes were cut near an emergency latch. Someone [*4] could reach in through the hole, pull the emergency latch, and roll the door up. Garcia called the police.

Garcia's wife, Patricia Garcia, testified that after the police left and without their knowledge, she decided it would be a good idea to contact the man who had called about the motorcycle. The mobile number for the person she contacted was (972) 800-4920. Using her cell phone, Patricia Garcia texted his phone number, pretending she had met him before and was interested in him. She also spoke with the person over the phone. Patricia asked if he had a motorcycle, and he said he did. He identified

---

[2]  At this pretrial hearing, there was also evidence of a similar incident in Garland, but the State never presented this offense to the jury.

himself to her as "Terry." He also texted Patricia a picture of himself. Patricia identified appellant in court as the person in the photograph, and the photo was admitted into evidence. Appellant and Patricia texted back and forth for about a week.

While Patricia Garcia was on the stand, the State introduced into evidence State's Exhibit No. 5. The documents contained in that exhibit were provided by T-Mobile in response to a subpoena duces tecum asking for phone records for (972) 800-4920, the number of the person who called to inquire about Garcia's motorcycle. T-Mobile's records show [*5] that number belonged to a "Terrytish J. Garmon." The exhibit also included a list of calls and texts made to and from (972) 800-4920 in May and June 2012. Exhibit No. 5 shows two calls from appellant's cell phone to Jude Garcia's phone on May 25, 2012. The records also showed Patricia and appellant had exchanged phone calls and text messages.

Irving Police Officer Philip Pearson responded to Jude Garcia's call to police about the missing motorcycle. He testified that the holes in Garcia's garage doors were in the upper panels, about six inches from the ceiling. Pearson stated you could reach in through the holes to pull an emergency release rope to allow you to open the garage door. It was like someone used a power saw to cut a circle out of the door. Pearson did not find any fingerprints on the doors. Pearson had never seen holes cut in a garage in that part of town and had not seen that method used for stealing a motorcycle. Garcia gave Pearson the phone number of the person who had contacted him about the Craigslist posting.

Detective Rocky Bailey was assigned to follow up on the case. He testified that he ran the cell phone number Garcia provided through a computer program. The number [*6] came back to a Terrish Garmon. Bailey also had the photograph that had been texted to Patricia Garcia. Bailey searched the name Terrish Garmon on Facebook and found a Facebook page in that name that included the same photograph. Next Bailey found an address for Terrish Garmon. Bailey had been investigating vehicle thefts since 1998 and had not seen holes cut in a garage before. He testified it was "very unique." Because of the unique cutting of the holes in Garcia's garage, Bailey shared information about the burglary with other law enforcement agencies in the area.

Detective Bailey obtained a search warrant for appellant's residence. He did not find the motorcycle or any stolen motorcycle parts. Bailey did find a piece of cardboard on which about thirty motorcycle descriptions were written, along with phone numbers and cities. Bailey said it was likely this information was from Craigslist ads. Bailey began to call the phone numbers listed. When Bailey called a Mark Menkiena in Grand Prairie, Menkiena told Bailey his motorcycle had been stolen.

### Unadjudicated Extraneous Offenses

Coppell Police Detective Steve Hayes testified that in March 2012, he investigated an attempted burglary of [*7] a habitation in Coppell owned by Jonathan Mohr. Mohr's garage door had a hole cut in it. This attempted entry method was very unusual, and Hayes hadn't seen it before. Mohr had placed a motorcycle for sale on Craigslist. Detective Hayes had the phone number of a person who had called Mohr about the motorcycle. The number was (469) 360-1379. During Hayes's testimony, State's Exhibit No. 13 was admitted into evidence. The exhibit contained phone records for the number (469) 360-1379. Hayes testified the name associated with that mobile number was Terrish Garmon. Mohr's motorcycle was not taken. Mohr's dog started barking, and Mohr came outside.

Detective Hayes shared information about this crime with other agencies and also gathered information from other agencies. He received information about a similar case out of Fort Worth. In that case, the

complainant placed a motorcycle for sale on Craigslist. There was a hole in the garage door, and the motorcycle was taken. The same mobile number used in the Coppell case was used in the Fort Worth case. Hayes also had information about a similar case in Grand Prairie. Again, there was a hole in the garage door and a missing motorcycle. The phone **[*8]** number used was again the 469 phone number that records indicated belonged to Terrish Garmon. Hayes looked into Terrish Garmon and learned about a 2004 Richardson offense involving a motorcycle that had been taken from a garage after holes were cut into the garage door. Appellant was found on the stolen motorcycle.

Jonathan Mohr of Coppell testified that someone attempted to steal his motorcycle on March 18, 2012. Mohr put an ad for his motorcycle on Craigslist. A man called him on March 17th and asked if he could come by and look at it. Mohr had received a few calls about the motorcycle, but only gave his address to this one person. Mohr set up a meeting with that person for late afternoon on March 17, but the man called back and said he was not going to be able to make it. Although they discussed getting together another day, the man never called back to reschedule or follow up. At about 3:30 a.m. that night, Mohr heard his dog barking and got up to check the inside of the house. The next morning, Mohr found a hole in his garage door. His motorcycle was still in the garage. Phone records indicated that the man called him from the number (469) 360-1379. Looking at State's Exhibit No. **[*9]** 13, the phone records associated with that number, Mohr testified they showed he exchanged phone calls and text messages with that number.

Bruce Carr testified that his son listed a motorcycle for sale on Craigslist. In early April 2012, the motorcycle was stolen from Carr's home in Fort Worth. The day before the bike was stolen, Carr got a call from someone who identified himself as Terry and wanted to come take a look at the bike. Carr gave the man his address, and the man said he would be over that day. Neither Carr nor his son had given the address out to anyone else regarding the bike. The man called back to cancel. The next morning, when Carr was backing his car out of the garage, he noticed three holes in the garage doors and realized the motorcycle was missing. When Carr did a reverse search on the phone number of the man he spoke to about the bike, it was connected to a Terrish J. Garmon.

Mark Menkiena testified that in 2012 he owned a motorcycle or sportbike and, because he lived in an apartment, kept it in the garage of a friend's home in Grand Prairie. In April 2012, he decided to sell the motorcycle and put it up for sale on Craigslist. Two men called him about it. Menkiena **[*10]** provided his friend's address to one of them and went there to wait, but the man did not show up and called to say he wasn't going to make it. The next morning, Menkiena's friend called to ask if Menkiena had picked the motorcycle up from his house because it was gone. There were no holes in the garage door or other signs of forced entry. Menkiena's friend told him he left a door into the garage unlocked. Menkiena provided police with the phone number of the man who had called him. Menkiena testified that his phone number and a description of his bike were among those listed on the paper found by Detective Bailey at appellant's house.

### Appellant's Prior UUMV Conviction

Dustin Mantell testified that in April 2004, a sportbike he owned was stolen from his mother's garage overnight. A triangular hole was cut in the garage and used to access a manual release. Mantell had not put the motorcycle up for sale. The police later called Mantell to tell him his motorcycle had been recovered. It had been in a wreck and was in poor condition. Mantell's mother's name, Carol Conway, was on the title to the motorcycle because she had cosigned for it.

Dallas Sheriff's Deputy Willie Washington testified **[\*11]** that he took appellant's fingerprints that morning. He compared the prints with those in State's Exhibit No. 23, a certified copy of a judgment, and testified that they were the same. Washington testified the judgment showed that appellant, Terrish Jermaine Garmon, was convicted of unauthorized use of a motor vehicle in October 2005. The date of the offense was April 27, 2004, and the complainant was Carol Conway.

Appellant rested without presenting any evidence.

The court's charge on guilt/innocence instructed the jury that it could not consider any testimony regarding appellant having committed offenses other than the charged offense unless it found beyond a reasonable doubt that appellant committed such other offenses. The charge further instructed that, even then, the jury was only to consider such evidence in determining motive, intent, scheme, design, or identity. The jury found appellant guilty and assessed his punishment at fifteen years' confinement and a $10,000 fine. This appeal followed.

### ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

In his first issue, appellant contends the trial court abused its discretion in allowing the State to present evidence of the extraneous burglaries **[\*12]** or attempted burglaries and evidence of the 2005 conviction. Appellant contends the trial court abused its discretion in allowing the evidence because: 1) the State failed to prove beyond a reasonable doubt he committed the unadjudicated extraneous offenses; 2) the extraneous offenses did not meet the criteria for admissibility under *rule of evidence 404(b)*; and 3) the probative value of these extraneous offenses was substantially outweighed by the danger of unfair prejudice.

*HN1* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. *TEX. R. EVID. 404(b)*. It may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Whether extraneous offense evidence has relevance apart from character conformity is a question for the trial court. *De La Paz v. State, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009)*. Thus, a trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard. *Id.* As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion. *Id. at 343-44*. Further, a trial court **[\*13]** cannot admit extraneous offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense. *Fischer v. State, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008)*.

*HN2* One of the main rationales for admitting extraneous offense evidence is to prove the identity of the offender. *Segundo v. State, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008)*. Here, the theory of relevancy is usually that of modus operandi in which the pattern and characteristics of the charged crime and uncharged misconduct are so distinctively similar that they constitute a "signature." *Id.* No rigid rules dictate what constitutes sufficient similarities. Common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress or any other elements which mark both crimes as having been committed by the same person. *Id.* The "doctrine of chances" may also come into play when using extraneous offenses to prove identity. That doctrine tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance. *Carrizales v. State,*

*414 S.W.3d 737, 745 (Tex. Crim. App. 2013)*. For the doctrine to apply, there must be a similarity between the charged and extraneous offenses, since it is the improbability of a like result being repeated by mere chance that gives the extraneous offense its probative weight. **[\*14]** *Brown v. State, 96 S.W.3d 508, 512 (Tex. App.—Austin 2002, no pet.)*.

*HN3* Relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *TEX. R. EVID. 403*. **HN4** *Rule 403* favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Martinez v. State, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010)*. Unfair prejudice refers not to an adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis. *Casey v. State, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007)*. When undertaking a *rule 403* analysis, the trial court must balance 1) the inherent probative force of the proffered evidence along with 2) the proponent's need for that evidence against 3) any tendency of the evidence to suggest decision on an improper basis, 4) any tendency of the evidence to confuse or distract the jury from the main issues, 5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and 6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be repetitive. *Id.*; *Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006)*. As with *rule 404(b)*, we review a trial court's **[\*15]** decision to admit evidence in the face of a *403* objection under an abuse of discretion standard, and the court does not abuse its discretion as long as its decision is within the zone of reasonable disagreement. *De La Paz, 279 S.W.3d at 343-44*.

We address appellant's first two complaints about the unadjudicated extraneous offense evidence together. First, appellant asserts the trial court abused its discretion in admitting this evidence because the State did not prove beyond a reasonable doubt that he committed these offenses. Similarly, appellant also maintains the unadjudicated extraneous offenses were inadmissible under *404(b)* to show his identity because he was not sufficiently tied to those offenses. Appellant maintains that without any evidence he was at the location of the burglaries or attempted burglaries, or evidence that he was in possession of burglary tools or the stolen motorcycles, it was not established that he committed the offenses. We disagree.

The charged burglary was committed in May 2012. The extraneous burglaries and attempted burglary were committed near that time, in March and April of 2012. Like the charged offense, the stolen item in the two other burglary cases was a motorcycle. In the **[\*16]** attempted burglary case, someone made efforts to get into a garage where a motorcycle was stored. In all three extraneous offenses, like the instant offense, the motorcycle owner had placed the bike for sale on Craigslist. In all three cases, the bike owner had given the address where the motorcycle was located out to only one person. Each time, that person said he was coming over to see the motorcycle, but did not show up. And each time, the motorcycle was stolen, or an attempt was made to steal it, that night. In the Grand Prairie, Fort Worth, and Coppell cases, the person who called to set up a time to come to see the motorcycle used phone number (469) 360-1379. That phone number belonged to a Terrish Garmon. Although a different phone number was used in the Irving burglary, that number was also linked to Terrish Garmon. In the Coppell attempted burglary and the Fort Worth burglary, someone cut holes in the garage as a means of opening the garage door. That same method was used to gain entry to Garcia's garage in the charged offense. Both Detective Hayes and Detective Bailey testified that this was a very unique method of committing

burglary. Although no holes were cut into the **[\*17]** garage in the Grand Prairie case and there were no other signs of forced entry, there was evidence the homeowner had left a door into the garage unlocked.

The characteristics of the charged offense and the uncharged offenses are so distinctively similar that they constitute appellant's signature or modus operandi. Appellant asserts that no evidence ties him to the crimes. Yet his cell phone number was used to contact the owners of the motorcycles, and in each case, he was the only person to whom the bike owner gave the location of the bike. That appellant would be the only person to get the address of a motorcycle and for that motorcycle to disappear that same night in a similar way each time is such a highly unusual event it is unlikely to happen by coincidence. We conclude a jury could have found beyond a reasonable doubt that appellant committed the three unadjudicated offenses. Likewise, the trial court did not abuse its discretion in determining that the uncharged offenses were admissible under *rule 404(b)* to show identity.

Appellant also asserts the 2005 conviction was not admissible at guilt/innocence under *rule 404(b)* because it was not a burglary conviction and it was too remote. In his brief, appellant **[\*18]** refers to the 2005 conviction as one for the offense of evading arrest. Appellant was convicted of two offenses stemming from his use of David Mantell's motorcycle, unauthorized use of a motor vehicle and evading arrest. At the hearing outside the jury's presence on the admissibility of extraneous offenses, the court ruled that it would allow evidence of the UUMV conviction, but would not allow the State to discuss the evading arrest. The State did not introduce evidence of the evading arrest conviction until the punishment phase. Because appellant's evading arrest conviction was not in evidence during the guilt/innocence phase of trial, his argument about it lacks merit. Further, assuming appellant meant to complain about the unauthorized use of a motor vehicle conviction, his brief does not mention UUMV at all, and thus he has not properly briefed this argument. *See TEX. R. APP. P. 38.1*.

Even if we construe appellant's brief liberally to include a complaint regarding the admission of the unauthorized use of a motor vehicle conviction, there was no error. We are not persuaded the prior conviction should have been excluded under *rule 404(b)* merely because the offense was unauthorized use of a motor **[\*19]** vehicle instead of burglary. The circumstances under which appellant came to be in possession of the motor vehicle, a motorcycle, are similar to the charged offense. Mantell's sportbike was stolen from his mother's garage overnight. A hole was cut in the garage to access a manual release. Appellant was found riding the stolen motorcycle.

**HN5** Regarding remoteness of the conviction, *rule 404(b)* contains no restrictions on how recent an extraneous offense must be to be admissible. *TEX. R. EVID. 404(b)*; *cf. TEX. R. EVID. 609* (for purpose of attacking credibility of witness, evidence of prior conviction is generally inadmissible if more than ten years have elapsed from date of conviction). Remoteness is an element of an offense's probative value under *rule 403*. *Gaytan v. State, 331 S.W.3d 218, 226-27 (Tex. App.—Austin 2011, pet ref'd)*. Remoteness alone is not a reason for the exclusion of extraneous offense evidence. *Id.* But it can significantly lessen the probative value of such evidence because the passage of time allows people to change. *Id. at 226*. Thus, we will consider appellant's argument about remoteness in our discussion below of his complaint that all extraneous offenses should have been excluded under *rule 403*.

Appellant's final complaint about the extraneous offense evidence is that the trial court **[\*20]** abused its discretion in allowing that evidence, both the uncharged offenses and the prior conviction, because

its probative value was substantially outweighed by its prejudicial effect. Appellant asserts the evidence had great potential to impress the jury in an ″irrational yet indelible way,″ and also complains the State spent a considerable amount of time developing this evidence when it was not necessary to the State's case.

The uncharged offenses were highly important to the State's case to show appellant's identity as the person who committed the burglary of Garcia's habitation. They showed that the way in which the instant offense was committed was appellant's signature. Viewed in isolation, the fact that Garcia's motorcycle was stolen the night appellant called about it could be seen as mere coincidence. But evidence that three other homes with motorcycles for sale had recently been broken into the same night appellant called about the motorcycles, suggested it was not mere chance.

Regarding the prior conviction, it was for the offense of unauthorized use of a motorcycle committed eight years before the charged offense. The remoteness of the conviction weighs against its probative [*21] value. But other factors favor its admissibility, including the similarities between that offense and the charged crime, and the fact that it was the only evidence that directly connected appellant to a motorcycle that had been stolen using a method similar to that used in the instant case.

In addition, the potential for any unfair prejudice or confusion of the issues based on the admission of this evidence, as well as the uncharged offenses, was slight. Further, the court instructed the jury that it was only to consider the extraneous offenses if it found beyond a reasonable doubt appellant committed them and, even then, to only consider it to determine motive, intent, scheme, design, or identity. Including voir dire and the punishment phase, this trial lasted only three days. We cannot say that the State devoted an inordinate amount of time to presentation of the extraneous offenses. We cannot conclude it was an abuse of discretion for the trial court to determine that the probative value of the extraneous offenses was not substantially outweighed by their prejudicial effect and overrule appellant's 403 objections. We overrule appellant's first issue.

### SUFFICIENCY OF THE EVIDENCE

In [*22] his second issue, appellant contends the evidence is insufficient to prove he committed burglary of a habitation. Again he argues that there is nothing to place him at or near Garcia's house or no evidence that he was in possession of items stolen from the house or of burglary tools.

*HN6* When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013)*; *see Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)*. Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)*. Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* Further, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Temple, 390 S.W.3d at 360*.

After reviewing the record in the light most favorable to the verdict, we conclude the circumstantial evidence presented at trial was sufficient to show [*23] appellant's identity as the person who entered

Garcia's habitation and committed the theft of his motorcycle. As previously discussed, the evidence showed appellant called Garcia to inquire about buying his motorcycle, which had been listed for sale on Craigslist. Appellant was the only person who called Garcia about the bike and the only person to whom Garcia gave his address. Appellant said he was going to come see the bike, but did not show up. The motorcycle was stolen that night. Holes were cut in Garcia's garage to gain access to an emergency latch. Police detectives testified this was a very unusual way to commit burglary. After the motorcycle had been stolen, but before Garcia knew about the theft, Garcia called appellant, and appellant said he was no longer interested in the bike and kind of laughed at Garcia. The State presented evidence that in three other recent instances, after a motorcycle owner had advertised the bike on Craigslist, appellant had called to get the location of the bike and set up a time to view it, but then cancelled. Each time, that same night, the owner's garage was broken into. In two of these three cases, the garage doors were cut in the same way **[*24]** Garcia's had been. In the third case, a garage door had been left unlocked. Also, eight years earlier, appellant was found using a sportbike that was stolen from a garage that had holes cut into it. Under the doctrine of chances, it is highly unlikely that it was just a matter of coincidence that Garcia's habitation and the others would have been burglarized using the same method of entry the very night appellant called to inquire about the motorcycle for sale and get the address. The combined and cumulative force of all the incriminating circumstances is sufficient to support this burglary conviction. We overrule appellant's second issue.

We affirm the trial court's judgment.

/Ada Brown/

ADA BROWN

JUSTICE

Do Not Publish

*Tex. R. App. P. 47*.

**JUDGMENT**

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 12th day of May, 2015.